The opinion of the court was delivered by
McEnery, J.
This suit was instituted for the purpose of establishing the legitimacy of plaintiffs as the children of Thos. W. Bothick, deceased, and of Catherine Connelly, also deceased, the alleged first wife of. Bothick, and for the eventual recovery of their inheritance as the heirs of their deceased parents.
The District Court ruled out all testimony as to community rights and claims so far as it went to establish a money judgment, but permitted it in this connection to show that there was property in this State owned by the deceased Bothick, reserving to plaintiff the right thereafter to assert their claims upon said property, and in the succession of Bothick in the court having jurisdiction of the succession. The case was submitted to a jury and their inquiry was limited to the question of the legitimacy of plaintiffs — whether or not *1383 Thos. W. Bothick was married to Catherine Connelly, and whether plaintiff was the issue of that marriage. The jury found a verdict in favor of plaintiffs, and a judgment in their favor was rendered thereon. The defendants appealed.
Pleas to the jurisdiction, res judicata, no cause of action, and estoppel were filed by defendants, each of which was overruled.
The defendants contend that after the exclusion of the money demand there was no amount in dispute to give jurisdiction. This objection is met by the allegation in the petition, and the evidence introduced thereunder to show that Bothick owned considerable property in the city of New Orleans, in which these children, if legitimate, may have an interest. The other pleas could more properly be argued in case plaintiffs pursued property in the hands of third persons, acquired at succession sale. On this point we express no opinion. It is certain that the plea of prescription can not be applied to the issue now pending, and it would be difficult to imagine a case in which the plea of estoppel could be argued to defeat a suit to establish legitimacy. Public policy favors claims of legitimacy, and we have said that where the conduct of the parties has been such as to create the presumption of marriage to the extent that it would yield only to proof, that there was no such marriage, a moral estoppel would intervene and forbid the falsifying of their acts and conduct by the parties. Blasini vs. Blasini, 30 An. 1398.
So far as the estoppel, the failure of plaintiffs to assert their rights in the suit for the settlement of the community in the marriage between Bothick and his second wife, née Cunningham, it will find its proper place with the other pleas in the assertion of rights claimed in that community interest, and on the property sold to settle it. On this point we also express no opinion.
There is no doubt that the plaintiffs are the children of Thomas W. Bothick and Catherine Connelly. Of this fact there is not the remotest circumstance to contradict it.
In the years 1846, 1847, 1848, 1849, Thomas W. Bothick lived in the city of New York, and in Newark, New Jersey. He came to New Orleans about the year¡¡1849 or 1850, and while here married twice, the last wife surviving him.
From the time of his arrival here to the 24th of July, 1874, he lived with Ann J. Cunningham. She was universally recognized as his wife, andwwas undoubtedly married to him. She died in 1874, and afterward_he_married Olivia'J. Bothick,-who survives.
*1384 During his residence in New York City and in Newark, New Jersey, he lived with Catherine Connelly as his wife. No proof of an actual marriage exists, and the fact of the marriage rests on oral evidence to establish the presumption of its existence.
The testimony in favor of plaintiffs is sufficient to establish a conclusive presumption of the marriage of Thos. W. Bothick and Catherine Connelly.
They kept house together as man and wife in NewYork City, and Newark, New Jersey. They were known in these communities as man and wife and received friends and relatives as such. In New York they resided near the residence of Catherine Connelly’s brothers, John and James, and visited them as man and wife. These brothers are spoken of as respectable. They are both dead. The testimony may be summed up in the evidence of John Stonier, the nephew of Thomas W. Bothick, who saw his uncle in New York City, in 1841, and subsequently in New Jersey, in 1846, 1847 and 1848. He did not know Catherine Connelly by this name, but knew her as “ Aunt Bothick.” Bothick and his aunt Bothick lived together as man and wife. He visited them in company with his mother, a sister of Thomas W. Bothick. They were treated and received as man and wife by his mother and his relatives generally, and he never knew anything to the contrary. All the testimony on behalf of plaintiffs is to this effect.
In fact, he was generally known as the husband of Catherine Connelly, and the testimony does not show that this relationship was ever doubted. There is not a fact adduced or a circumstance shown that would indicate that Catherine Connelly was the mistress of Thomas W. Bothick. Their children were baptized with the name of Bothick, and after he abandoned Catherine Connelly, in 1849, or 1850, she was always, in her semi-widowhood, recognized as the wife of Thomas W. Bothick. She was buried as his wife.
The plaintiff, W. H. Bothick, was brought to this city at an early age and taken into Thomas W. Bothick’s family. His daughter, the co-plaintiff, resided in this city also and was introduced into his family as his daughter.
To negative this testimony, the defendants rely upon loose declarations in Bothick’s second household, where W. H. Bothick, in family disturbances, was called a bastard. And on the declarations bf a half sister that his father said he and his sister were illegitimate, but that his mother was a good woman.
*1385 And on the last testament of Bothick in which he referred only to his last two marriages, and made provisions for the children in each, ignoring the first set of children altogether. The loose declarations in fits of anger, in evident hostility to the plaintiff, W. H. Bothick, in the second household of his father, are entitled to little weight. And in reference to his reputed declaration of the illegitimacy of his children, to his daughter when on a visit to him, and the nonrecognition of the children in the will, we think that a moral estoppel intervenes in favor of his children to prevent the denial of his acts and conduct. During the residence of the parties in New York and New Jersey they lived in the observance of all the obligations of marriage, and their acts and conduct were not compatible with any other theory than an actual marriage between them. Blasini vs. Blasini, 30 An. 1398.
The defendants rely upon the case of Powers vs. Executor, 35 An. 630. This case is in full accord with Blasini vs. Blasini, 30 An. 1388. In both cases the doctrine is announced that the evidence of cohabitation as man and wife must be general and consistent, not partial and circumscribed, and of such character as to authorize and invite the presumption that they were actually married with all the formalities required to constitute a valid-marriage by the law of the place at which it is reported to have been celebrated.
In the case of Powers vs. Executor it was proved that the reputation of living together as man and wife was negatived by the acts of the parties, by the reputation of concubinage among friends and relatives.
In the case of McConnell vs. New Orleans, 15 An. 410, it was shown that Mary Ann Wall was reported to be the mistress of Pulley.
In the instant case there is, as stated, no-testimony whatever that indicates that Thos. W. Bothick and Catherine Oonnelly occupied any other relation to each other than husband and wife when they cohabited together in New York and New Jersey.
The abandonment of the home by the husband is not sufficient to destroy this presumption, nor are his declarations, even if satisfactorily proved in this case, sufficient for this purpose after the abandonment.
We conclude that the plaintiffs are the legitimate children of Thos. W. Bothick and Catherine Oonnelly.
Judgment affirmed.