754." Succession of Jamison, 108 La. 282, 32 South. 382.

The statement, in the syllabus of the opinion in the case entitled "New Orleans National Bank v. Raymond," 29 La. Ann. 355, 29 Am. Rep. 335, that "any party in interest may proceed by rule to remove anything which illegally clouds his title," is too broadly made, and the ruling in that case, upon which appellants rely, has no application to the facts here presented.

Judgment affirmed.

---

(46 South. 13.)

No. 16,832.

EAMES v. WOODSON et al.

(Feb. 17, 1908. Rehearing Denied March 30, 1908.)

**1. PARTIES—CAPACITY TO SUE—HOW OBJECTION RAISED.**

The capacity of a person suing as heir is not put at issue by a general denial. The want of such capacity should be specially pleaded in limine litis.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Parties, § 118.]

**2. MARRIAGE—EVIDENCE TO ESTABLISH—PRESUMPTION.**

In the absence of primary evidence, a marriage may be proved by evidence of cohabitation as man and wife and general reputation. The presumption of marriage arising from such a state of facts may be rebutted by proof that no marriage between the parties ever took place, or that the marriage was void for some nullity established by law. Papers purporting to be certificates of marriage, not proven up and never recorded, furnish no evidence of the celebration of the marriage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Marriage, §§ 61, 62, 73.]

**3. MORTGAGES—REDEEMABLE SALE OF LAND.**

A redeemable sale of real estate, where the apparent vendor remains in possession and the price is vile, will be considered as a mortgage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, §§ 79, 86.]

**4. SAME—PAROL EVIDENCE.**

The heirs of an apparent vendor, under allegations of error and fraud, may show by parol that a sale of real estate absolute on its face was intended to operate as a mortgage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, § 98.]

**5. TAXATION—TAX SALE—WANT OF NOTICE—PRESCRIPTION.**

A tax sale of real estate, made without notice to the tax debtor or his legal representatives, is null and void, and is not cured by the constitutional prescription of three years, where the widow in community continued in possession of the property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, §§ 1332–1337.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by David W. Eames against H. D. Woodson. Nicey Woodson intervened. Judgment for defendant and intervener, and plaintiff appeals. Affirmed.

Alfred David Danziger and Charles Louque, for appellant. Charles Francis Fletchinger, for appellees.

LAND, J. This is a petitory action, instituted in October, 1905, to recover three parcels of real estate situated at Gentilly, in the rear of the Third district of the city of New Orleans. Plaintiff claims title to the first two properties through alleged sales from Mrs. Mariane Gainnie, widow of David Woodson, executed in 1895, and to the third property through an alleged sale for city taxes made in 1897. The petition alleges that the defendant is in actual physical possession of said properties without any title whatsoever.

The defendant, after pleading the general issue, avers that he and his sister Nicey were the owners of all the property sued for, and acquired title to the same by inheritance from their deceased mother, Mrs. Mariane Gainnie, widow of Henry Woodson, and also widow of Lafayette Lewis by second marriage. Defendant further avers that the two first properties described in the petition were purchased by his said mother in 1872 for the price of $400; that in the year 1895 the said properties were partly in cultivation as a truck garden, containing, among other things, many valuable fruit trees, a house, and out-

houses, and were well worth the sum of $1,000; that said properties were in 1895 in the actual physical possession of his said mother, and so remained until her death in July, 1905. Defendant charges that the two pretended sales of 1895 from his mother to the plaintiff were in truth and fact intended to operate as mortgages to secure loans of money; that his said mother, old and infirm and illiterate, was led and made to believe by the representations of the plaintiff that the said acts of sale were mortgages, and was thereby induced to sign the same with her mark; that the plaintiff acknowledged the true nature of said acts to the defendant and divers other persons, and from time to time collected sundry sums of money for his said mother for accrued interest and taxes; and that in December, 1905, the defendant tendered to the plaintiff the sum of $350 in full settlement of all sums of money advanced to his said mother or paid out for her account for taxes.

Defendant further avers that the property thirdly described in the petition belonged to Lafayette Lewis, the second husband of Mariane Gainnie; that said property was acquired during their said marriage, and on the death of said Lewis, without legal heirs, in October, 1887, his interest therein was inherited by his surviving widow. Defendant charges that the city tax sale of 1897, at which the plaintiff became the purchaser, was null and void for want of notice and other legal defects and informalities.

Defendant prayed for judgment declaring the two acts of sale of 1895 to be mortgages, and decreeing the tax sale of 1897 to be null and void, and quieting and maintaining respondent in possession as owner.

Mrs. Nicey Woodson, widow of Anderson Robertson, intervened in the suit, and joined in the defenses made by her brother, the original defendant. Plaintiff answered this intervention with a plea of general denial.

After a lengthy trial there was judgment in favor of the defendant and the intervener as prayed for, and also judgment in favor of the plaintiff and against them for $350, with recognition of his special mortgage on the two first described properties, and reserving his right to recover taxes paid for account of defendant and intervener. Plaintiff appealed.

Mrs. Mariane Gainnie, widow of David Woodson, in January, 1872, purchased from Thos. B. Lee a lot of ground measuring 1 arpent front on the Gentilly Road by 20 arpents in depth, known by the number 99 on a certain plan drawn by L. H. Pilie, surveyor, in 1859.

In July, 1888, the widow Woodson donated a portion of the lot, measuring 70 feet front on said Gentilly Road by 50 feet in depth, to the New Zion Baptist Church. Lot 99 was intersected by the right of way of the Louisville & Nashville Railroad.

In 1893, the widow Woodson made affidavit that said lot No. 99 constituted her homestead. This affidavit was duly recorded.

On August 27, 1895, Mrs. Mariane Gainnie, described as "the widow of the late Mr. David Woodson," made her mark to an authentic act of sale, by which she conveyed to David Waring Eames the rear portion of lot No. 99, further described as "being a part of the same property which said vendor purchased since her husband's death from Thomas B. Lee." The act recites that the sale was made for the price of $100, paid in cash.

On October 8, 1895, Mrs. Mariane Gainnie, described as "the widow of the late Mr. David Woodson," signed with her mark another authentic act of sale to David Waring Eames, conveying the residue of lot No. 99 for the price of $50, paid in cash.

Both acts authorized the cancellation of the inscription of the vendor's declaration of homestead.

It appears that after the death of David

Woodson his widow married one Lafayette Lewis, who thereafter (in 1881) purchased the lot No. 97, adjoining lot No. 99. Lewis died intestate in 1887. In 1897 the Lewis lot was sold for city taxes, and was adjudicated to D. W. Eames, represented by his son, Leo. M. Eames.

In this court counsel for plaintiff contend that Mariane Gainnie was never married to David Woodson, and that consequently the defendant and intervener are unacknowledged bastards and without standing to question the contracts of their natural mother. This issue was not raised by the pleadings, and is not adverted to in the written opinion of the trial judge. It has been held in a number of cases that a general denial does not put at issue the capacity of one suing as heir, and such want of capacity must be specially pleaded in limine litis. Hennen's Digest, vol. 2, p. 1152, B, 1.

There is, however, abundant evidence in the record to show that Mariane Gainnie and David Woodson lived together as man and wife and had four children as the issue of their union. The defendant testified that his parents were married in 1862 or 1863, and that he was born in October, 1864. At the instance of plaintiff's counsel, the defendant produced the following document, to wit:

"No. 54.     Marriage Certificate.
"The State of Louisiana, Parish of St. John the Baptist.

"I, George S. Darling, provost marshal of the parish of St. John the Baptist, do hereby certify that I have this eleventh day of December, A. D. one thousand eight hundred and sixty-four, in the parish of St. John the Baptist, joined in the bonds of matrimony David Woodson and Marie Gainnie.

"In testimony whereof, I, the undersigned, provost marshal of the parish aforesaid, have signed my name.

"[Signed]   Geo. S. Darling,
"Provost Marshal."

It is argued by counsel for the plaintiff that the signature of this officer was not proven, and that the courts of Louisiana cannot take judicial cognizance of the signature of an officer unknown to our laws, and, further, that the act in question was entirely outside of his powers and functions. There is no proof of the execution or recordation of this document, and we cannot take judicial notice of the capacity and signature of Geo. S. Darling.

This certificate cannot be considered as legal evidence, and must be ignored. Sufficient evidence remains to show that the parties lived together as man and wife and were so recognized in the community. Plaintiff himself in several written acts contracted with Mariane Gainnie as the widow of David Woodson. In the absence of primary evidence, marriage may be proven by secondary or circumstantial evidence. Powers' Widow v. Executors of Charbmury, 35 La. Ann. 630; Blasini v. Blasini, 30 La. Ann. 1388; Bothick v. Bothick, 45 La. Ann. 1382, 14 South. 293. The burden was on the plaintiff to show that no marriage between the parties ever took place. Id.

Plaintiff's counsel also assails the status of Mariane Gainnie as widow of Lafayette Lewis. This marriage was also proven by reputation and cohabitation. Defendant testified that he got the license for this marriage, and produced a certificate which he testified had been in possession of his mother ever since. The certificate bears date June 20, 1875, and recites that by virtue of a special license, issued from the district court for the parish of St. John the Baptist, Rev. Wilson Wales, a Baptist minister, did celebrate the bonds of matrimony between L. Lewis and Mrs. Warren Woodson. The certificate purports to have been signed by Rev. Wilson Wales and five witnesses. The evidence shows that Wilson Wales was a colored man and a Baptist preacher; but the sig-

natures to the document were not proven. The certificate recites that "one copy is returnable to said court." It is shown that marriage certificates were not recorded in the parish of St. John the Baptist between the years 1869 and 1880. The objection of plaintiff's counsel to the admissibility of this paper in evidence, on the ground that its execution had not been proven, should have been sustained. If said certificate was not per se legal evidence of a marriage, the door was open to proof of marriage by cohabitation and reputation. Plaintiff himself recognized Mariane Gainnie as the widow of Lafayette Lewis, because he testified that he handed to her a notice that the city taxes on the property of Lafayette Lewis were delinquent.

The property known as lot 99 was the duly recorded homestead of the widow Woodson.

On August 27, 1895, the widow Woodson with her mark signed an authentic act of sale conveying that portion of said lot lying north of the Louisville & Nashville to David W. Eames for the price of $100 cash. Plaintiff testified that the real consideration was $200 cash, that the extra $100 was paid as a bonus, and that the real price was not set forth in the deed, in order to keep down the assessment for taxation.

On October 8, 1895, the widow Woodson signed with her mark an authentic act conveying the remainder of the homestead to David W. Eames for the price of $50 cash. A counter letter shows that the vendee bound himself to reconvey the property within one year on the repayment of the price, with interest, and on the payment of such advances as he might make to the vendor during said year. The transaction was a mortgage on the face of the counter letter. Even considered as a sale with the right of redemption, the vileness of the price and the continued possession of the vendor made the contract one of security. Howe, Executor, v. Powell, 40 La. Ann. 307, 4 South. 450. No counter letter was produced as to the con-

tract of August 27, 1895; but the defendant testified that there was a counter letter (since lost), reciting that the sale was intended as a mortgage, and that the plaintiff so declared to the widow Woodson at the time. Defendant further testified that the plaintiff collected interest on the amounts of both sales, and that he (the defendant) paid plaintiff $25 at one time and $20 at another on account of interest and taxes. Several other witnesses testified to declarations of the plaintiff tending to show that both sales were intended as mortgages. The plaintiff contradicted the testimony, but the trial judge gave credit to the testimony of the defendant, corroborated, as it was, by that of other witnesses and the facts and circumstances of the case. The judge found from the evidence that the tract in 1895 was worth from $800 to $1,000, and according to the two conveyances of record was sold for $150; that the apparent vendor remained in possession of both tracts as owner from the date of the two deeds in 1895 to the time of her death in 1905, without payment of rents; that the apparent vendor paid sums of money to plaintiff on account of interest and taxes, and plaintiff admits that such payments continued until July, 1899; and that the memoranda indorsed by plaintiff on the counter letter of October 8, 1895, shows a charge of interest that could not accrue under the contract on a loan of $50. After a careful consideration of all the evidence in the record, we find no good reasons for reversing the conclusions of the district judge as to the character of the two sales in question.

The tax sale of 1897 of lot No. 97, belonging to the estate of Lafayette Lewis, was null and void for want of the notice to his widow and heirs. This tax sale was provoked by the plaintiff, D. W. Eames, falsely claiming to have a quitclaim title from Lafayette Lewis, and by his written directions the notice was served on his son, representing

"D. W. Eames, agent." Plaintiff testified that he handed this notice to the widow of Lewis. There is no proof that D. W. Eames represented the widow and heirs of Lafayette Lewis. As well said by the district judge, if Eames represented them as agent, his purchase inured to their benefit. As to the prescription of three years it cannot avail plaintiff, because the evidence does not show his actual possession of the property for three years. The evidence tends to show that plaintiff leased the property or a portion thereof for two years with the consent of the widow Lewis. Plaintiff seems to have been afraid to sue on any of his apparent titles. He endeavored to evict the old woman under cover of a lease to one Lofton, who was living with her at the time. Both, with their belongings, were turned out of the house, but re-entered as soon as the officers departed. According to plaintiff's testimony he permitted the old woman to retain possession of the premises from motives of benevolence. In the next breath he asserts that he took proceedings to have her and Lofton evicted, "ostensibly for not paying rent," but really for stealing hogs. The record of the eviction suit, brought in 1899, shows that the widow Lewis was no party to the suit or lease. The property leased to Lofton was not described so as to identify it. In spite of the devious methods employed by the plaintiff to get possession of the lots in question, the widow continued in possession until her death in July, 1905. Upon her demise, her son took possession for himself and sister. The widow owned an undivided half interest in the Lewis lot, and this interest passed to her heirs, who may also have inherited through their mother the other half interest owned by the estate of Lafayette Lewis. Defendant and intervener, as heirs of their mother, have a standing in court to assail plaintiff's asserted titles.

The judgment is affirmed.