**(109 So. 909)**

**No. 27576.**

**Succession of ST. ANGE.**

(June 28, 1926.   Rehearing Denied Oct. 5, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Marriage ⬦⟿50(1).**

Evidence *held* to establish marriage as affecting rights of surviving widow and child to husband's property.

**2. Judgment ⬦⟿461(1).**

Parties seeking to annul judgment of competent court, regular and formal on its face, have burden of proof.

**3. Marriage ⬦⟿40(4).**

When a man introduces a woman as his wife, calls her his wife, and lives with her publicly as such, marriage is presumed.

Appeal from Civil District Court, Parish of Orleans; William H. Byrnes, Jr., Judge.

In the matter of the succession of Joseph Reginald St. Ange. On petition by Clara St. Ange and others, wherein Henry J. Goins intervened. A judgment was entered, recognizing Clara St. Ange, the intervener, and others, as sole heirs of deceased, and annulling and avoiding a prior judgment recognizing Albertine Aubert St. Ange as surviving spouse, and Regina Delorita St. Ange as sole heir, of deceased, and Albertine Aubert St. Ange and Regina Delorita St. Ange appeal. Judgment appealed from reversed, and judgment originally rendered reinstated, and made the final judgment of the Supreme Court.

Ernest J. Robin, of New Orleans, for appellants.

Carbajal & Gaudin, Milton R. De Reyna, and J. L. Warren Woodville, all of New Orleans, for appellees plaintiff and interveners.

BRUNOT, J. Joseph Reginald St. Ange died intestate in the city of New Orleans on December 28, 1923, leaving an estate consisting of real and personal property. The succession was opened by Albertine Aubert St. Ange as the widow in community of the deceased and as natural tutrix of the minor, Regina Delorita St. Ange. The petition alleges that plaintiff and the deceased were married, in the city of New Orleans, on February 8, 1908; that Regina Delorita St. Ange was the only issue of the marriage and the sole heir of the deceased, and that all of the property owned by deceased at the date of his death was acquired during his marriage to petitioner, and it therefore belonged to the community of acquets and gains existing between them. In due time the plaintiff was recognized as the surviving spouse, in community, of the deceased and the owner of one-half of the community property, and the minor, Regina Delorita St. Ange, was recognized as the sole heir of the deceased and the owner of his estate, subject to the usufruct of the petitioner. This judgment was read and signed April 14, 1924. On July 22, 1924, Clara St. Ange, wife of Remy Despinasse, Almeda St. Ange, wife of Gus. Boswell, and Herminia L. St. Ange, wife of Oscar Doucet, alleging themselves to be the sisters and sole heirs of Joseph Reginald St. Ange, deceased, filed a petition in which they aver that Albertine Aubert St. Ange and their deceased brother were never married; that the judgment recognizing Albertine St. Ange as the widow in community, and the minor, Regina Delorita St. Ange, as the sole heir, of Joseph Reginald St. Ange, deceased, is null and void, and that it was obtained fraudulently and upon false representations. They pray that said judgment may be annulled and that they be recognized as the sole heirs of the deceased, and entitled as such to a one-third interest each in his estate.

Albertine Aubert St. Ange, individually and as natural tutrix of her minor child, excepted to the petition upon three grounds, viz. want of capacity in petitioners to sue or

to stand in judgment, no right or cause of action, and vagueness. Thereafter Henry J. Goins, claiming to be a legitimate nephew of Joseph Reginald St. Ange, deceased, filed an intervention in the suit, in which he alleges the nullity of the judgment recognizing Albertine Aubert St. Ange as the widow in community, and her daughter as the sole heir of the deceased, and prays to be recognized as an heir of the deceased and that he be sent into possession of a one-fourth interest in the estate. The same exceptions were filed to the intervention as were filed to the original petition. On April 17, 1925, the exceptions were heard and referred to the merits. Answers were filed to the suit and intervention and thereupon Clara St. Ange, wife of Remy Despinasse, and Almeda St. Ange, wife of Gus. Boswell, filed a supplemental and amended petition, in which they allege that their true names are Clara St. Ange, wife of William Taylor, and Almeda St. Ange, wife of Louis Gattes. Upon the issues thus joined the case was assigned, tried, argued, and submitted to the court for adjudication. Eleven days thereafter, on the motion of plaintiffs, the case was reopened, further testimony was admitted, and judgment was rendered in favor of the plaintiffs and intervener, and against Albertine Aubert St. Ange and the minor, Regina Delorita St. Ange, annulling and avoiding the judgment attacked, recognizing the plaintiffs and intervener as the sole heirs of the deceased, and sending them into possession of his estate in the proportion of an undivided one-fourth interest to each. From this judgment the parties cast appealed.

[1] The sole question involved in this suit is whether or not appellant was the wife of the deceased. The maternity and age of the minor is not disputed. The record shows that, when the succession was opened, the minor was 7½ years of age, and paragraph 8 of plaintiff's petition is as follows:

"That said Albertine Aubert, although she lived for years with the said Joseph Reginald St. Ange as man and wife, was never married to him, and your petitioners further allege that the affidavits annexed to the said petition are false and spurious."

From this paragraph it may be presumed that the child was born during the years appellant and the deceased *admittedly lived together as man and wife,* and this judicial admission that they so lived together may be considered as dispensing with the necessity of oral proof of that fact. There is, however, abundant proof of it, and not a suggestion, by any of the witnesses for either side, to the contrary.

[2, 3] In this matter plaintiffs and intervener are seeking to annul and avoid a judgment of a competent court which, on its face, is regular and formal in every respect. The burden of proof is upon them to satisfactorily establish the averments of their pleadings. It may be noted in this connection that, where a man introduces a woman to his friends as his wife, calls her his wife, and he and she live together publicly as man and wife until her death, the marriage is presumed.

The lower court did not directly pass upon the exceptions and plea of estoppel filed by defendants, but the judgment rendered either ignores or indirectly overrules them. We prefer to dispose of the case upon the merits, but in doing so we will consider defendants' exceptions to the capacity of the plaintiffs and intervener to bring the suit and to stand in judgment therein.

The proof upon which plaintiffs and intervener rely in their attempt to disprove the marriage and thus to annul the judgment they attack is that there is no record in the city of New Orleans of the marriage of Joseph Reginald St. Ange to Albertine Aubert, or of the issuance of a license for their marriage; that Joseph R. St. Ange registered the birth of Regina Delorita St. Ange with the

recorder of births, deaths, and marriages of New Orleans, as the illegitimate issue of himself and Albertine Aubert, and the testimony of Clara St. Ange Despinasse. This witness in her original petition declares herself to be the wife of Remy Despinasse. In her amended petition and testimony she says she is the wife of William Taylor; that she has been parted from her husband 24 years, and has lived with Despinasse as man and wife for 20 years; that Albertine Aubert and Joseph R. St. Ange lived publicly and continuously together as man and wife up to the date of and for 14 or 15 years before his death; and that both admitted to her that they were not married. On the other hand, Albertine Aubert testified directly that she and Joseph R. St. Ange, in the presence of her father and mother and two witnesses, were married in New Orleans on February 8, 1908, by a colored preacher named E. K. Worrington; that from the date of her marriage to that of her husband's death they were looked upon and recognized as husband and wife in the community in which they lived; that prior to her marriage to St. Ange she had secured a divorce from her first husband, in suit No. 84324, Albertine Aubert v. Julian Numa Marine, of the docket of the civil district court of Orleans parish; that her mother and father are dead; that she does not know the names of either of the witnesses of the marriage, but they were workmen whom her husband brought in to serve as witnesses; that thereafter the house of the preacher who performed the ceremony burned and he went to Chicago; that she had located him by letter, and learned from him that all of his records were destroyed by the fire. In corroboration of the defendant's testimony two acts showing the acquisition of real property by Joseph R. St. Ange were offered and filed in evidence. One was passed December 29, 1921, and the other June 20, 1922. In both of these acts Joseph R. St. Ange makes the following declaration of his marital status:

161 La.—35

"The said purchaser here declared under oath that he is married to Albertine Aubert, who is his first wife and who lives with him."

Mr. J. Robin testified that he wrote two letters to E. K. Worrington. The latter's reply to the first letter was "that whatever records he had of any marriages which he had celebrated had all been burned." To the second letter he replied:

"I would be glad to give you all the assistance I could, but I don't remember that at all. I married lots of persons in the city during my pastorate but I don't remember who just now."

Burnell Goins, the uncle of the intervener, testified that he was raised with Joseph Reginald St. Ange. The deceased was the first man witness ever worked with, and he taught the witness his trade. Witness and the deceased were intimate acquaintances for 35 years. Witness was also acquainted with Albertine Aubert St. Ange. He knew her when she was married to her first husband, and after she married St. Ange. Witness says that he worked with St. Ange for years; that deceased introduced Albertine Aubert St. Ange as his wife and the little child as his lawful child, and he always claimed them to be such. The wife of Burnell Goins testified that she is the aunt of the intervener; that she had known Joseph R. St. Ange 35 years, and has known Albertine Aubert 18 years; that St. Ange and Albertine were married 16 years; that he always introduced her as his wife, and Delorita as his child; and that it was the general reputation in the community that they were man and wife.

Elias Pailet testified that he had known St. Ange for many years; that St. Ange was a carpenter, and witness sold him factory work; that he had occasion to see St. Ange at his home often; that he knew Albertine Aubert St. Ange; that the deceased referred to her as his wife and to Delorita as his daughter.

Numa Marine, Jr., is the son of Albertine Aubert by her first husband. He was eight years of age in 1908. He knows that his

mother and St. Ange lived together as man and wife as long as he stayed at home, and he knows that they bore the reputation in the community of being man and wife.

Allen B. Cambre testified that St. Ange was a carpenter and witness sold him lumber, that he knew the deceased and Albertine St. Ange, that he had been to their home about 25 times, and St. Ange always spoke of Albertine as his wife.

Alice Aubert testified that St. Ange and Albertine Aubert lived together as man and wife for about 16 years; that St. Ange always held Albertine out in the community as his wife; that he always spoke of her as such, and Delorita was recognized in the community as the legitimate child of St. Ange and Albertine.

There is also attached to the petition of the widow and heir to be sent into possession the affidavits of John Auld and Burnell H. Goins, who say that J. Reginald St. Ange was married but once, and then to Albertine Aubert, and that Regina Delorita St. Ange is the sole issue of said marriage.

. We have not reviewed all of the testimony in detail, but we have given the substance of it.

On the exception to the capacity of plaintiffs and intervener to sue, we will say that they have not offered any documentary evidence whatever, or any direct testimony to establish the legitimacy of any one of them. Two of the plaintiffs are admittedly living in open adultery, and have been thus living for so many years that, when their petitions were filed, they judicially declared that their paramours were their husbands. There is but little escape from the conviction that plaintiffs and intervener are trying to re-enact the rôle of the skillet calling the pot black.

The records show that all of the property left by the deceased was acquired long after 1908, the date when the marriage is alleged to have taken place, and, if the judgment appealed from is avoided, it belongs to the community existing between the spouses.

In Holmes v. Holmes, 6 La. 463, 26 Am. Dec. 482, a case in which the existence of the alleged marriage was denied, the court said:

"On the trial the plaintiff offered witnesses to prove that the plaintiff and Mrs. Holmes, who were then in court, had lived in New Orleans a length of time and had a family, and were reputed husband and wife. The evidence was rejected by the court, a bill of exceptions taken, and, a judgment of nonsuit being rendered, the plaintiff appealed.

"It is contended on the part of the appellee that, as the Code requires marriages to be celebrated in the presence of three witnesses, and an act to be drawn up and signed by the parties, the witnesses, and the person performing the ceremony, parol evidence is inadmissible to prove a marriage in this state.

"Marriage is regarded by our law in no other light than as a civil contract, highly favored, and depending essentially on the free consent of the parties capable by law of contracting. Our Code does not declare null a marriage not preceded by a license, and not evidenced by an act signed by a certain number of witnesses and the parties; nor does it make such an act exclusive evidence of a marriage. These laws relating to forms and ceremonies, here regarded as directory to those alone who are authorized to celebrate marriages, are intended to guard against hasty and inconsiderate marriages in defiance of parental authority. Like all other contracts, it may be proved by any species of evidence not prohibited by law, which does not presuppose a higher species of evidence within the power of the party; and cohabitation as man and wife furnishes presumptive evidence of a preceding marriage. It is not to be presumed those who hold themselves out in society as man and wife, who are rearing a family of children at their domestic board, to whom the father gives his name, over whom he exercises a parent's authority, and administers a parent's protection and support, are living in open disregard of public morals, and that their common offspring are bastards; such a family is already in the possession of a civil condition or status not to be questioned lightly or collaterally."

In the syllabus of the Holmes Case a number of authorities are cited in support of the proposition that particular forms and ceremonies are not sacramental in relation to

marriage contracts and that cohabitation as man and wife furnishes presumptive evidence of a preceding marriage.

In the case of John Blasini et al. v. Succession of Silvestre Blasini, 30 La. Ann. 1388, the court held that:

"Where a man introduces a woman to his friends as his wife, calls her his wife, and he and she live together publicly as man and wife until her death, and their children, born while they are thus living together, are baptized, reared, and educated as their legal offspring, the law will presume that they had been lawfully married, and that their children are legitimate, until it is shown that no marriage between them ever took place, or that it was void on account of some nullity established by law."

This ruling is cited with approval in Powers v. Charbmury's Ex'rs, 35 La. Ann. 637; Bennett v. Cignoni, 41 La. Ann. 1147, 8 So. 544; Bothick v. Bothick, 45 La. Ann. 1383, 1385, 14 So. 293; Succession of Benton, 106 La. 503, 31 So. 123, 59 L. R. A. 135.

In the Blasini Case there was considerable testimony tending to disprove the existence of a marriage between the parties. One witness testified that he censured Blasini for mistreating his wife, Isabella, and Blasini told him that she was not his wife. A colored woman testified that she found Isabella crying on one occasion and in response to a question as to why she permitted her husband to treat her that way, she answered that "I am not married to him, and that is the reason he treats me so."

Another witness testified that she overheard Blasini tell her husband that he was living with Isabella and having children by her, but that he was not married to her. The court questioned the credibility of these witnesses. It found their statements at variance with human nature and human probability, and dismissed them by saying:

"Under the influence of passion, to excuse himself, or to escape further censure, Blasini might have said he was not married; but such a statement could not be permitted to belie the entire history of his public cohabitation."

Counsel for plaintiffs and intervener rely upon the following cases: Green v. New Orleans, S. & G. R. Co., 141 La. 120, 74 So. 717; Eames v. Woodson, 120 La. 1031, 46 So. 13; Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L. R. A. 1915A, 200, Ann. Cas. 1915C, 717; Castagnie v. Bouliris, 43 La. Ann. 943, 10 So. 1; Succession of Llula, 44 La. Ann. 61, 10 So. 406; Benavis v. Barba, 32 La. Ann. 1264; Powers v. Charbmury's Ex'rs, 35 La. Ann. 630; Succession of Stiles, 11 Orleans App. 208; Succession of Scott, 6 Orleans App. 30. We have read these cases carefully, and not one of them is in conflict with the doctrines announced in the cases from which we have quoted supra. On the contrary, they are all in harmony and accord.

We think the judgment appealed from is erroneous, and that it should be annulled. It is therefore ordered that the judgment appealed from be avoided and reversed, and that the judgment originally rendered in the civil district court, recognizing Albertine Aubert St. Ange as the widow in community of Joseph Reginald St. Ange, deceased, and as such the owner of one-half of the community property listed therein, and recognizing Regina Delorita St. Ange as the sole heir of the deceased and the owner of his estate subject to the usufruct of the widow and surviving spouse in community of the deceased, be reinstated and made the final judgment of this court.