## RUSSELL v. TAGLIALAVORE et al.*
### No. 4616.

Court of Appeal of Louisiana. Second Circuit.

March 2, 1934.

Cook & Cook, of Shreveport, for appellant.

C. B. Prothro and Lyons & Prentiss, all of Shreveport, for appellees.

TALIAFERRO, Judge.

At the intersection of Jordan street and Fairfield avenue in the city of Shreveport, a few minutes before 7 o'clock a. m., August 1, 1931, the motor vehicles of the defendants, Arthur Chelette and Alphonse Taglialavore, collided, and Nellie Gray Russell, wife of plaintiff, was killed. Jordan street runs easterly and westerly. Taglialavore, in his Chevrolet truck, was traveling thereon easterly, at a rate of speed variously estimated at from 25 to 35 miles per hour. Fairfield avenue runs almost due north and south. Chelette, accompanied by two of his brothers and a colored woman, was traveling north thereon at a rate of speed less than that of the Chevrolet truck. The traffic light at the intersection was not then on. When Chelette reached the south side of the intersection, he observed the approaching truck on his left, and, believing he had am-

ple time to cross over the south half of Jordan street before the truck would reach that point, drove into the intersection and was on the north side of the street railway track, which is in the center of the street, when run into by the truck driven by Taglialavore. The left front wheel of the truck struck the left rear wheel of the Chelette car, causing it to change its course of travel from north to west, while the truck itself, after disengaging the car, veered to its left, struck, ran over, and killed the wife of plaintiff as she was in the act of stepping from the curb on the north side of Jordan street at the northeast intersection thereof with Fairfield avenue.

Deceased left no children. Plaintiff, her surviving husband, sues Chelette and Taglialavore under article 2315 of the Civil Code (as amended by Act No. 159 of 1918), to recover $7,500 damages for the wrongful death of his wife. The acts of negligence imputed to defendants are clearly set up in article VI of the petition, which we quote:

"He shows that the death of the said Nellie Gray Russell was directly and proximately caused by the negligence of Alphonse Taglialavore and of Arthur Chelette in the following respects, to-wit:

"(1) That the corner of Fairfield Avenue and Jordan Street where the collision occurred, is a busy corner and there is very heavy traffic at about this time in the morning with no lights or other signal device operating at that time; that this was known to both the said Chelette and Taglialavore, and notwithstanding this fact they entered the intersection at a speed which was too great, considering the location and the ordinary condition of traffic at that point.

"(2) That the point at which the collision occurred is a business section of the city of Shreveport, and that the said Chelette and the said Taglialavore were exceeding the speed limit as prescribed by the ordinances of the City of Shreveport, which is 12 miles per hour.

"(3) That both of the said drivers did not keep a proper lookout for approaching traffic on entering the intersection.

"(4) That, alternatively, if the said drivers did observe each other, that then and in that event they did not take heed of the danger of collision, each with the other, but entered the intersection in total disregard of the other's rights."

Taglialavore denied generally the allegations of the petition, and affirmatively averred that the collision was caused by Chelette operating his car at an excessive and illegal rate of speed as he entered the intersection, and suddenly driving his car across the path of travel of the truck, thereby making a collision inevitable. He further averred that plaintiff's wife was struck and killed by the Chelette car and not by his truck, and that he was free of any sort of negligence in connection with the collision and its results. He averred additionally: "Further answering, defendant avers that should the Court find that Abner Russell and Nellie Gray went through the formalities of marriage, as prescribed by law, then and in that event defendant avers that at the date of the alleged marriage of said parties the said Abner Russell was already married to Virginia Wallace who was living at the time and not divorced from him."

Chelette generally denied the allegations of plaintiff's petition, disclaimed any responsibility on his part for the collision and death of plaintiff's wife, but averred that the negligence of Taglialavore alone was the sole and proximate cause thereof; that he was traveling in a careful and prudent manner, with due regard to the safety of himself and others; that he entered the intersection before Taglialavore did, and therefore had the right of way; that he was well past the center of the intersection when struck by the truck; that, when the truck struck his car, it (the truck) was on its wrong side of the street, and for that reason, and because of this gross negligence on the part of Taglialavore, the accident occurred.

The lower court rejected the demands of plaintiff, and dismissed his suit as to both defendants. It held that plaintiff was not the lawful husband of Nellie Gray Russell, and therefore had no cause of action to sue for damages for her death. Plaintiff has appealed.

The defense of Taglialavore propounds two questions of law and one of fact, viz.:

(1) That plaintiff and decedent were never legally married. That is, the legal formalities were not complied with.

(2) That plaintiff and decedent could not contract a valid marriage because plaintiff was the husband of one Virginia Wallace, and not divorced from her.

(3) That defendant Taglialavore in no way contributed to the accident, but that the negligence of defendant Chelette was the sole cause thereof.

So far as Chelette is concerned, plaintiff

makes no serious contention here that the collision of the vehicles and the death of his wife were caused by this defendant's negligence. Hence he will be dismissed by us from further consideration. The evidence clearly absolves him from any blame or negligence whatever.

■ There is no merit in the first proposition advanced by defendant. It is argued that, because the procès verbal of the act of celebration of the marriage of plaintiff and Nellie Gray was signed by only one witness, such marriage was null and void, in view of article 105 of the Civil Code, which requires three witnesses to the marriage, who must sign the act of celebration. The testimony discloses that there were as many as three witnesses present at the marriage, though only one signed the act of celebration. It has been held by many cases that the articles of the Code providing the manner and method of contracting and celebrating marriages are merely directory to the celebrant, and that the failure to technically observe them does not strike the marriage with nullity. Holmes v. Holmes, 6 La. 463, 26 Am. Dec. 482; Succession of Hubee, 20 La. Ann. 97; Succession of Pearce, 30 La. Ann. 1168; Sabalot v. Populus, 31 La. Ann. 854; Succession of Fortier, 51 La. Ann. 1562, 26 So. 554; Landry v. Bellanger, 120 La. 962, 45 So. 956, 15 L. R. A. (N. S.) 463, 14 Ann. Cas. 952; Succession of St. Ange, 161 La. 1085, 109 So. 909.

■ The second question raised by the defense presented a serious legal proposition, far-reaching in its effect and importance, res nova in our jurisprudence, and, due to such importance and the bearing a decision of it will have upon scores of marriage contracts and divorces rendered in the state, we certified the question to the Supreme Court and asked for instructions. The opinion of the court and instructions to us are as follows (152 So. 540):

"O'Niell, C. J.

"The Court of Appeal for the Second Circuit, acting under authority of section 25 of Article 7 of the Constitution (1921), asks for instruction on a question of law arising in a case which has been argued and submitted to the court for decision.

"The facts, from which the question arises, are stated by the Court of Appeal. Abner Russell brought this suit against Alphonse Taglialavore and others for damages for the death of Mrs. Nellie Gray Russell, who, the plaintiff alleged, was his wife. She was killed in an automobile accident, in which, the plaintiff charges, the defendants were guilty of negligence. They pleaded in their answer to the suit that when the plaintiff married Nellie Gray he was already married, and not divorced, and hence that his marriage to Nellie Gray was null. The facts in that respect are stated also by the Court of Appeal. Abner Russell married Virginia Wallace in March, 1907, in Caddo Parish, where they were residing and continued to reside. On the 20th of March, 1916, while Abner Russell and his wife, Virginia Wallace Russell, were yet residing in Caddo Parish, he brought suit against her in the Second District Court, in Bossier Parish, for a divorce, on statutory grounds. He alleged in his petition that he and his wife were residents of Caddo Parish and were married in that Parish, which is adjacent to Bossier Parish, but was not in the same judicial district. On the same day on which the suit was filed in Bossier Parish, the wife filed an answer denying every allegation in the petition, except the allegation that she was the plaintiff's wife. She did not except to the jurisdiction of the court. On the next day after the answer was filed, the case was taken up and tried and a judgment of divorce rendered in favor of the plaintiff. Two days afterwards he married Nellie Gray.

"The question propounded by the Court of Appeal is whether the district court in Caddo Parish had jurisdiction to render the judgment of divorce, considering that it was alleged and was a fact that neither party to the suit resided in Bossier Parish, but considering also that the wife appeared and answered the suit, without excepting to the jurisdiction of the court.

"Article 93 of the Code of Practice declares that if a person, other than a minor, is cited to appear as defendant in a suit before a judge whose territorial jurisdiction does not extend to the defendant's domicile, but who otherwise would have jurisdiction to hear and decide the case, and if the defendant so cited pleads to the merits of the case, instead of declining the jurisdiction of the court, the judgment rendered in the case shall be valid. It does not appear that this court has ever had occasion to decide whether article 93 of the Code of Practice is applicable to a suit for divorce. In some states the rule which is stated in the article is applicable to divorce suits. See Werz v. Werz, 11 Mo. App. 26; Gant v. Gant, 49 Mo. App. 3; Nolker v. Nolker (Mo. Sup.) 257 S. W. 798; Tate v. Tate (Mo. App.) 59 S.W.(2d) 790; Scott v. Scott, 174 Iowa 740, 156 N. W. 834; Clay

v. Clay, 134 Miss. 658, 99 So. 818; Purnell v. Nichol, 173 Ark. 496, 292 S. W. 686. In some of the other states it is not so. See Watts v. Watts, 130 Ga. 683, 61 S. E. 593; Beach v. Beach, 4 Okl. 359, 46 P. 514. Compare also Lagerholm v. Lagerholm, 133 Mo. App. 306, 112 S. W. 720.

"In Andrews v. Andrews, 188 U. S. 14–42, 23 S. Ct. 237, 47 L. Ed. 366, Chief Justice White, for the court, said that the defendant in a divorce suit in a court that did not have jurisdiction over the person of the defendant could not confer jurisdiction upon the court by answering the suit. But that suit was brought in another state than that in which the parties resided and had their matrimonial domicile. They were married in Boston, Massachusetts, where they resided and established their matrimonial domicile; and the husband, Charles S. Andrews, went to Sioux Falls, South Dakota, and resided there for the period required by the law of that state to acquire a domicile there, and then sued for and obtained a divorce there for a cause which occurred in Massachusetts when he resided in Massachusetts, which, however, was not a cause of action for a divorce in Massachusetts. The wife received notice of the suit and appeared by counsel and filed an answer, denying that her husband was then or ever had been a resident of South Dakota. Thereafter, the husband and wife agreed to a financial settlement, in pursuance of which she consented to the granting of a divorce, and on her instructions her attorneys withdrew her appearance, and thereafter a decree of divorce was rendered. A few days afterwards Andrews returned to Boston, where he married another woman, and re-established his domicile. When he died, the contest arose between the two widows, as to which one of them should be deemed the surviving wife, entitled to be appointed administratrix of the estate. The Supreme Judicial Court of Massachusetts (176 Mass. 92, 57 N. E. 333) decided in favor of the first Mrs. Andrews, because of a statute which declared that if an inhabitant of the Commonwealth of Massachusetts went into another state or country to obtain a divorce for a cause which occurred in Massachusetts while the parties were domiciled in Massachusetts, or for a cause which would not authorize a divorce by the laws of Massachusetts, a divorce so obtained would be of no force or effect in Massachusetts. (2 Mass. Rev. Laws 1902, c. 152, p. 1357, § 35, Pub. St. 1882, c. 146, § 41). The second Mrs. Andrews contended that, under the full faith and credit clause of the Constitution of the United States, the divorce decree rendered by the South Dakota court was entitled to the same force and effect in Massachusetts that it had in South Dakota, and that, insofar as the Massachusetts statute conflicted with that provision in the Constitution of the United States, the statute had no effect. But the Supreme Court of the United States held that the Massachusetts statute was valid, and should prevail, because it was directed only at citizens of Massachusetts who went into other states for the purpose of practicing a fraud upon the laws of Massachusetts, by obtaining a divorce in another state without having a bona fide domicile in that state. The court said that, as the Constitution of the United States did not confer any power upon the government of the United States to regulate marriage in the states, or its dissolution, if it should be held that the Massachusetts statute was violative of the full faith and credit clause of the Constitution of the United States, it would come to pass that both the Federal government and the state governments were bereft of a power which must belong to and reside somewhere in every civilized government. It was with that idea, and under those circumstances, that the court held that the consent of the first Mrs. Andrews, as defendant in the divorce suit in South Dakota, could not make the decree of divorce, granted in South Dakota, valid in Massachusetts in spite of the prohibitory law of that state. The decision therefore is not important here.

"In Mann v. Mann, 170 La. 958, 129 So. 543, it was said that the defendant, wife, who had never resided in this state, could not, by answering the suit for a divorce, give the court jurisdiction to grant a divorce for a cause occurring in another state; but the decision was based upon the fact that the wife, in the beginning of her answer to the suit, protested that the court did not have jurisdiction.

"The only question that the Court of Appeal is concerned with, in this case, is whether the marriage of Abner Russell to Nellie Gray was absolutely null. If it was not absolutely null, even though it might have been voidable by a direct action during the lifetime of both parties, it is not subject to collateral attack by the defendants in this suit. Hence, if the marriage of Abner Russell to Nellie Gray was not absolutely null, there is no occasion for the court to decide in this case whether the marriage might have been annulled by a direct action during the lifetime of the parties.

"A majority of the members of this court are of the opinion that the marriage of Abner Russell to Nellie Gray was not absolutely null, or subject to collateral attack by the defendants in this suit. The marriage was solemnized according to the forms prescribed by law, after Abner Russell had obtained the decree of divorce. An annulment of marriage could not be accomplished without a decree annulling the judgment of divorce.

"In State v. Donzi, 133 La. 925, 63 So. 405, it was held that the validity of a marriage could not be questioned in a collateral proceeding, even by charging bigamy. Donzi was prosecuted and convicted for deserting his wife 'without just cause', in violation of Act No. 34 of 1902, p. 42. He had sued to have the marriage declared null on the ground that the prosecutrix had a husband living in New York, from whom she was not divorced when she married Donzi. He offered to prove the nullity of his marriage in defense of the criminal prosecution, but the evidence was excluded, and the ruling was affirmed by this court. The ruling was cited with approval in State v. Loyacano, 135 La. 945, 66 So. 307, where the court refused to stay a prosecution for wife desertion, or non-support, pending an action to annul the marriage for want of consent. The modern tendency of the law and of the courts is to condemn the harsh doctrine of declaring marriages null ab initio for causes for which they might as well be voidable only, by a direct action, during the lifetime of the parties. 18 R. C. L. §§ 68–69, and §§ 76–77, pp. 446–447; 38 C. J., p. 1280, § 9.

"In Atkins v. Scarborough, 52 La. Ann. 800, 27 So. 134, it was held that, in a suit brought by a woman against her husband for a separation of property, in a court that did not have jurisdiction over the husband, ratione materiæ, if he appeared and answered the suit, the court could render a judgment against him which would not be absolutely null. This court pretermitted the question whether the judgment of separation of property in that case was subject to annulment in a direct action.

"The members of this court are unanimous in the opinion that, if the marriage of Abner Russell to Nellie Gray should have been deemed null, it would have produced all of the civil effects of a valid marriage, according to articles 117 and 118 of the Civil Code, if the parties were in good faith, believing that the judgment divorcing Russell from his first wife was a valid judgment; and, as the record shows that Russell is a very humble and uninformed colored man, there is no reason to doubt that he had implicit faith in his lawyer's obtaining for him a valid judgment of divorce.

"For the reasons stated, the opinion which we give to the Court of Appeal, in response to the court's request, is that the marriage of Abner Russell to Nellie Gray was not an absolute nullity, or subject to collateral attack by the defendants in this suit; and we find it therefore unnecessary to say whether the marriage of Abner Russell to Nellie Gray was subject to annulment in a direct action during her lifetime.

"Overton, J., dissents from the decree that the divorce was not an absolute nullity."

■ The evidence in the case leaves no doubt as to Taglialavore's negligence being the sole cause of the collision between his truck and Chelette's car. He was traveling at a rate of speed prohibited by law on a busy thoroughfare of the city of Shreveport, on the wrong side of the street, and struck the car after it had cleared the path of travel he should have been pursuing. He was not keeping a proper lookout as he approached the intersection and entered it on the wrong side after Chelette's car had undertaken to cross it.

Plaintiff's wife was knocked unconscious by the impact of the truck, and lived only thirty minutes thereafter. She and plaintiff were living apart at the time, and had been thus living for seven or eight months. He says they were on "bad terms." Previously they had separated and had become reconciled. He was in Minden, La., when she was killed, and only knew of her death, he says, some fifteen days after it occurred. He viewed her body at the undertaker's place in Shreveport, but did not attend the funeral. He says that sometimes he paid the rent for the house in which deceased lived and sometimes paid her grocery bill, but that she also paid these accounts at other times. For lack of means, he did not pay the expense of her funeral. It is quite obvious that plaintiff and deceased were uncongenial, and that their conjugal relations were of an intermittent character. His grief at her passing must have been negligible, and the actual loss of her consortium amounted to little to him.

■ A right of action to sue for damages by the surviving husband for the wrongful death of the wife was not provided for in original article 2315 of the Civil Code, nor by Act No. 71 of 1884, nor by Act No. 120 of 1908, both of which amended this article. This right was first vested in the surviving husband by Act No. 159 of 1918, which amends

article 2315 as previously amended. A right of action under this law accrues to the surviving husband only when damage to him follows the negligent killing of his wife by another. The offending person is obliged to repair the damage. Necessarily, no fixed rule obtains for assessing the amount of damages in such a case. Each case must depend upon its own peculiar facts and circumstances. In the present case we cannot conceive that plaintiff has suffered damages for the negligent killing of his wife beyond a nominal amount. We think $500 sufficient.

For the reasons herein assigned, the judgment of the lower court which rejected plaintiff's demands against Alphonse Taglialavore is annulled, avoided, and reversed; and, for the reasons herein assigned, there is now judgment in favor of plaintiff, Abner Russell, and against said Alphonse Taglialavore for $500, with 5 per cent. per annum interest from judicial demand until paid and costs of suit. The judgment of the lower court rejecting plaintiff's demands and dismissing his suit as against Arthur Chelette is affirmed.