FOURNET, Justice.
 

 Clydell Belgard and her husband, James E. Goodwin, alleging that on Sunday, November 14, 1948, while she was on a temporary leave from the Juvenile Detention Home of Caddo Parish, they were married by a Justice of the Peace in Bossier City, Louisiana, sought her release in this proceeding under the holding of this court in the case of State v. Priest, 210 La. 389, 27 So.2d 173. She is appealing from the refusal of the trial judge to grant the relief sought.
 

 Clydell, a girl of 14 who, by appearance, could have passed for 16 or 17, was taken into custody by the probation officer of the Juvenile Court of Caddo Parish on November 9, 1948, on a charge of having committed an act or acts of juvenile delinquency “by being truant from school,” and, following a preliminary hearing on November 12, was ordered held pending further investigation. She was released in the custody of a friend, Mrs. Margaret Tibbetts, on Sunday, November 14, upon the friend’s representation that she would be returned to the detention home later in the day after attending church. That afternoon she was married in Bossier City by a Justice of the Peace after she and James E. Goodwin had obtained a license upon their representation that she was 16 and after her mother had confirmed the fact that she had given them her consent. They returned to Shreveport immediately after the ceremony and lived together as
 
 *1065
 
 man and wife in the home of mutual friends before she reported back to the detention home. Two days later they instituted these proceedings for her release under the authority of the Priest case. The juvenile judge, although of the opinion that a married minor could not be detained for truancy under the Priest holding, overruled the motion and proceeded with the hearing in an effort to .determine whether it was to the best interest of the subject child that she be given the care and protection of the state.
 

 At this hearing it developed that Clydell is a good student, of good moral character, and a regular church attendant. It was shown, however, that for a number of years she.was cared for by her grandmother who lived in Sikes, Louisiana, near Winnfield, due to the fact that her father had died of blood-poisoning in 1940 and her mother, giving birth to a child the next day, was confined to a sanitarium for some 14 months thereafter. This arrangement continued even after her mother remarried in 1943, Clydell only staying with her mother during the summer months. During these visits with her mother, however, she found she was unable to get .along with her stepfather (even voluntarily complaining to the juvenile authorities that he was molesting her, though this proved to be groundless), and, with her mother’s consent, she went to live in the Genevieve Home in Shreveport. Not being satisfied there, she left in August of 1948, and, through arrangements made by her mother, moved into the home of the Rev. D. J. Vasco and his wife, the minister of the church to which Clydell and her mother belonged and people of unimpeachable character who were life-long friends of her mother and father. This arrangement was that Clydell would help Mrs. Tibbetts and Mrs. Vasco about the house in exchange for her supper and a place to sleep, the mother furnishing her with clothes; school, breakfast, and lunch money; spending money; and other small incidentals. The only intimation in the record that this was not a proper home for the child is the statement of the probation officer that “there was not sufficient room in the home where she was staying.” She was living in this home when, on Friday, November 5, 1948, she was given permission by one of her teachers at the Fair Park High School to leave because she felt ill and had a slight fever. Mrs. Vasco immediately took her to her mother’s home, where she was given medicine and kept in bed. On Monday and Tuesday, still feeling unwell, she did not return to school. It was while she was absent on Monday that she called the principal of her school advising him of her intention to marry. The principal admonished her about getting married at her age and informed her that until she did it was compulsory that she attend school. On Tuesday, when she did not return to school, he reported the matter of her absence as required by law. A charge was made by the probation officer that she was a truant and she was taken
 
 *1067
 
 into custody that same afternoon. On the following Sunday afternoon she married James E. Goodwin, a young man of 20 who was a resident of Shreveport, a high school graduate, and, at the time, employed by the American News Company. This is the marriage upon which the motion for Clydell’s release and the dismissal of the truancy charge is based.
 

 The judge, after a hearing during which all of the above stated facts were' brought to light, found as a fact that Clydell was not a delinquent on account of truancy. He concluded, however, that this evidence disclosed she was, at the time the charge was made, a neglected child in that she was without proper guardianship and, as such, in need of the care and protection of the state in order that she might be prevented from assuming the duties and responsibilities of married life. He therefore ordered her committed for an indefinite period to the State Industrial School for Girls at Alexandria, Louisiana. He was also of the opinion that inasmuch as the subject child in the Priest case was not actually in the custody of the court at the time of her marriage, as was Clydell, the case was not controlling.
 

 While this marriage was consummated in violation of Article 92 of the Revised Civil Code, as amended by Act No. 140 of 1934, which prohibits ministers and magistrates from marrying any female under the age of 16, and also in violation of Article 99, as amended by Act No. 312 of 1948, which fixes a waiting period of 72 hours after the issuance of the license during which such ministers and magistrates are prohibited from performing a marriage, there being no other impediment to the marriage, it is, nevertheless, a valid marriage under the jurisprudence of this state. State v. Golden, 210 La. 347, 26 So. 2d 837; State v. Priest, supra. The redactors of our code and the legislature in amending these articles did not provide for the nullity of the marriages performed in violation thereof, but, instead, provided in the former case for the removal from office of the magistrate performing a ceremony in violation thereof and for the suspension forever of the minister’s right to perform such ceremonies, and, in the latter case, for the revocation of the right to perform a marriage for one year. Consequently, Clydell is irrevocably emancipated by this marriage as a matter of right. Articles 379 and 383. And although until she reaches the age of 18 she is not relieved of all of the disabilities that attach to minority by this emancipation, she is relieved of parental control and, as was held in the Priest case, is no longer amenable to the compulsory school attendance law of this state. Furthermore, having acquired the status of a wife, it is not only her right but also her duty to live with her husband at their matrimonial domicile and to follow him wherever he chooses to reside. Article 120.
 

 It is our opinion, therefore, that inasmuch as Clydell Belgard’s marriage to James E. Goodwin is valid, of necessity,
 
 *1069
 
 the juvenile court is without authority to prevent her from assuming the duties and responsibilties of a married woman.
 

 While we view with sympathy the trial judge’s deep convictions of the tragedy inherent in the marriage of girls of tender years and his skepticism of any ultimate good resulting therefrom, we recognize the basic fact that under our system of government thé matter of fixing the public policy of this state with respect to the age at which people may or may not marry as well as fixing the status of marriages solemnized in violation thereof lies exclusively within the province of the legislative branch.
 

 For the reasons assigned, the judgment appealed from is annulled and set aside and it is now ordered that the relator Clydell Belgard Goodwin be released.
 

 O’NEILL, C. J., takes no part.