See also, 220 La. ——, 56 So.2d 246.

**56 So.2d 242**

**STATE v. CRONIN.**
**No. 40416.**
Dec. 10, 1951.

R. A. Dowling, New Orleans, for defendant-appellant.

Bolivar E. Kemp, Jr., Atty. Gen., Severn T. Darden, Dist. Atty., George McCulloch, Jr., Asst. Dist. Atty., Alexander E. Ralston, Jr., Asst. Dist. Atty., all of New Orleans, for appellee.

LeBLANC, Justice.

This case is on appeal from a judgment of the Juvenile Court of the Parish of Orleans under which the juvenile, Robbie Jewel Cronin, was declared to be a delinquent child and committed to the Convent of the Good Shepherd for an indefinite period.

The juvenile, fourteen years of age at the time, was charged in a petition filed by the Probation Officer on April 18, 1951, with delinquency within the jurisdiction of the Juvenile Court in that she did, on May 9, 1951, at about 10:30 o'clock p. m. perform a strip tease dance at the Dog House Night Club, 300 North Rampart Street, a place where spirituous liquors are the principal commodity sold.

In a per curiam dictated in the record by the trial judge of the Juvenile Court, after hearing, it is stated that the juvenile admitted in court, under oath, and in the presence of her mother, Mrs. Bertha Mae Waldrop, that she had committed the offense charged against her and he thereupon imposed the sentence of commitment.

After she had been ordered to be detained and prior to the hearing of the case the juvenile was married to Edward Haley, Jr. Her marriage and alleged emancipation thereunder gave rise to certain proceedings which were taken by the husband subsequent to the judgment which had been rendered, some of these being involved in applications for writs to this court, none of which, however, had anything to do with the merits of this case. It is pertinent to mention at this time also that this appeal was taken and is being prosecuted by the husband.

The last proceeding in the Juvenile Court was a motion in arrest of judgment which was denied. That motion was based on practically the same grounds which form the basis of the assigned errors committed in the Juvenile Court which are complained of on this appeal. A further point involving the legality of the sentence is also presented and will be considered after the others have been disposed of.

Appellant first contends that the Juvenile Court was without jurisdiction rationae materiae to hear the case, render a verdict and pass sentence on the alleged de-

linquent child because she had been married prior to the hearing and a married woman is not a juvenile. By her marriage, it is urged, she had become emancipated and thenceforth the Juvenile Court was deprived of jurisdiction over her.

The Juvenile Court of Orleans Parish derives its jurisdiction from the Constitution of the State of Louisiana. Such jurisdiction as it has is vested under Article VII, Sec. 96 of the Constitution of 1921, the latest amendment thereto being by Act No. 513 of 1948 and adopted at the General Election held November 2, 1948. Except to extend the jurisdiction of the court to include capital offences committed by children under 15 years of age, the amendment did not change the jurisdiction of the court as it existed prior to the amendment. As it presently exists the section reads in part as follows: "There shall be a Juvenile Court for the Parish of Orleans, which shall have jurisdiction, except for capital crimes and crimes defined by any law defining attempted aggravated rape committed by children fifteen years of age or older, of proceedings concerning neglected or delinquent children under seventeen years of age, and of the trial of all persons charged with contributing to the neglect or delinquency of children under seventeen years of age, * * *."

Act No. 169 of 1944 was adopted in pursuance of the provisions of the Article of the Constitution as it existed prior to the 1948 amendment. That Act is now embodied in the LSA–Revised Statutes of 1950, Chapter VI, Title 13:1671 et seq. Under Section 1674 we find the definition of the words used in the statute and in Paragraph 3 the word "child" is said to mean "a person under the age of seventeen years not emancipated by marriage." Under that definition, as qualified by the words "not emancipated by marriage", there might be considerable force to the contention that is made although it is to be observed that under the Article of the Constitution conferring jurisdiction on the Juvenile Court in all proceedings concerning neglected or delinquent children under seventeen years of age there is no modification or qualification of the words "child" or "children".

Be that as it may, after the amendment to the Article of the Constitution in 1948, under which the Legislature was given the power to regulate the manner of conducting all proceedings in the Juvenile Court, the Legislature adopted Act No. 82 of 1950 LSA–R.S. 13:1561 et seq., which by its specific terms is an Act "to repeal Chapter 6 of Title 13 of the Louisiana Revised Statutes of 1950 being R.S. 13:1561–13:1809, and substituting therefor a new Chapter 6, being R.S. 13:1561–13:1593, * * *."

Under the section of the Act containing the definition of the words used therein the word "child" is defined as follows: " 'Child' means a person less than seventeen years of age, and no excep-

tion shall be made for a child who may be emancipated by marriage or otherwise." This definition which now governs destroys whatever force there may have been in the contention now being made that the marriage of the delinquent child in this case and her resulting emancipation had deprived the Juvenile Court of its jurisdiction over her. In the absence of any attack on the Act of 1950 the presumption in favor of its validity and its legality must prevail.

Counsel for the appellant refers to two recent cases in which this court held that children under 14 years of age, who had married, were not children under parental control and were therefore not amenable to the school attendance law and hence, could not be detained in Juvenile Detention Homes for truancy. These are the cases of State v. Priest, 210 La. 389, 390, 27 So. 2d 173, 174, and In re State In Interest of Goodwin, 214 La. 1062, 39 So.2d 731. Both of these cases, however, were decided prior to the adoption of Act No. 82 of 1950 and it is significant to note that in the case of State v. Priest the Court stated that "[t]he question of whether a minor who is married may be prosecuted under the provisions of Act No. 30 of 1924 [LSA–R.S. 13:1791 et seq.] as a juvenile delinquent is not before the Court at this time."

Neither of the cases is apposite to the situation presented in the case now on appeal and therefore neither is controlling.

■ The next error alleged to have been committed by the trial judge is with regard to "the so-called confession" which, it is stated, he compelled the juvenile to make under duress and without the benefit of counsel.

In this connection the record discloses that the child was questioned by the judge, in the presence of her mother, and she freely and voluntarily answered everything he asked her. After informing her specifically that she had been brought before him as a delinquent child because, on the night of March 9, 1951, she had performed as a dancer at the Dog House Night Club where spirituous liquors are sold, he asked her if she could tell him anything about this, and her answer was: "Yes, I danced there." No element of a confession appears; it was simply a voluntary admission of fact, and certainly there was no duress or undue influence used in any manner.

Another complaint of the appellant is that the delinquent child was deprived by the trial judge of her Constitutional right to be represented by counsel.

In respect to this complaint we refer again to the record to find out what transpired, and this is what it reveals: One of the attorneys asked the court not to take any action in the matter until the Supreme Court would act on a writ which he stated they were applying for. The attorney was asked by the court in what capacity he was appearing, to which he replied "as attorney for the defendant". The court then asked the delinquent juvenile if Mr. Hill was her attorney and she said he was not. He then

asked her if Mr. Gatlin was her attorney and she said he was not. She was then advised by the trial judge as follows: "I will direct you. You don't have to say anything if you don't want to but it is your right to say anything if you wish because you can waive immunity if you wish and this is not a statement that will in any way incriminate you whether you want these gentlemen for your lawyers and to represent you." Her reply was: "Judge, I don't want no lawyers or anyone representing me."

Considering that this young person had just a few moments before been married, it is reasonable to assume that she had sufficient judgment and knew what she was doing. Besides, her mother was present and apparently concurred in all that was done. Under these circumstances it cannot rightfully be said that the defendant was deprived of the benefit of counsel or of any of her constitutional rights.

The next complaint is aimed at the trial judge's action in hearing the case in closed chambers after having excluded the attorneys who had previously intervened, from the Court Chambers.

Since in the discussion of the previous complaint it was concluded that the court did have the right to hear the case without any attorney representing the accused where the accused asked that such be done, it is only necessary to show that under LSA–Revised Statutes 13:1579 as enacted by Act No. 82 of 1950 the court is

permitted to exclude the general public and admit only those persons who have a direct interest in the case. Since the defendant had already stated that she did not desire the services of any attorney and had asked the judge to "see him alone", the judge's action in this case seems to have been justified. LSA–R.S. 13:1579 provides: "All cases of children shall be heard separately from the trial of cases against adults and without a jury. The hearings shall be conducted in an informal manner, and may be adjourned from time to time. * * * The general public shall be excluded and only such persons admitted as have a direct interest in the case."

Again we find it pertinent to mention that the juvenile's mother was present at the hearing held in closed Chambers, was interrogated by the court and certainly appeared willing to cooperate with the court in doing all that was thought to be for the best interest of the child.

additional point made on appeal which involves the legality of the sentence imposed on defendant arises out of the fact that she was committed to The Convent of Good Shepherd, which, it is stated, is not a State or City institution, nor a public institution. Assuming that it is a private institution we find that under the provisions of LSA–R.S. 13:1580 the court is specifically empowered to assign the custody of children adjudged to be delinquent to institutions of that character. It is true that there is a requirement that

in committing a child to such an institution the court shall select one that is approved by the State Department of Public Welfare. But the section further provides that where there is no such institution so approved, the court may commit the child to some other institution, social agency or association, which, in the judgment of the court is suitable for the care of the child. All of this tends to indicate the broad discretion which is placed in the Juvenile Judge in committing a child adjudged to be delinquent. Moreover, there is no showing in the record in this case that the Convent of the Good Shepherd is not an approved institution. Appellant's complaint, however, is not based on that ground but on the basis of the religious denomination of that institution which, of course, has no bearing whatsoever on the matter.

Otherwise, it is stated in appellant's brief that the law of Louisiana directs that in the case of a delinquent (female) child the sentence should be to the State Industrial School for Girls and LSA–R.S. 15:912 is cited as the law relied on for that proposition. That section of the LSA–Revised Statutes is found in Chapter II which deals with prisons and correctional institutions. The particular section cited relates to the State Industrial School for Girls established by the State and which is located in Rapides Parish. Under its provisions, judges of Juvenile Courts are *not directed to, but may,* commit legally adjudged delinquent children to that institution. There are cases arising at times when no doubt

such a commitment becomes necessary and the judge has to exercise the discretion that is thus granted to him. Obviously in the present instance the judge did not consider this to be such a case and he committed the child to an institution which he thought was suitable for her care.

Judgment affirmed.

McCALEB, J., concurs in the decree.

56 So.2d 246

**STATE v. CRONIN.**

**In re PALLOTTA.**

**No. 40480.**

Dec. 10, 1951.

See also, 220 La. 233, 56 So.2d 242.