213 So.2d 190 (1968)
Winnie PARKER, Wife, Plaintiff-Appellant,
v.
Kenneth SAILEAU, Husband, Defendant-Appellee.
No. 2426.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1968.
Joel B. Dickinson, Baton Rouge, for plaintiff-appellant.
Kenneth Saileau, in pro. per.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is an action to annul a marriage. It was instituted by Winnie Parker against Kenneth Saileau (sometimes spelled Kenneth Soileau). Judgment was rendered by the trial court dismissing the suit, and plaintiff has appealed.
*191 A wedding ceremony was performed on November 28, 1967, by Rev. Robert C. Carter, a minister of the Gospel, uniting plaintiff and defendant in the bonds of matrimony. Only two persons, other than the parties and the minister, witnessed the ceremony, and the act evidencing the celebration of the marriage was signed only by the parties, the minister and these two witnesses. The ceremony was performed on the day the marriage license was issued, although no waiver of the required 72 hour waiting period had been issued by any proper authority. The parties have not lived together at any time since the wedding ceremony was performed.
Plaintiff alleges as grounds for demanding that the marriage be decreed to be null and void: (1) That the ceremony was not performed in the presence of three witnesses, and the marriage certificate was not signed by three witnesses, as required by LSA-C.C. art. 105; (2) that 72 hours did not elapse between the issuing of the license and the performance of the wedding ceremony, as required by LSA-R.S. 9:203 and LSA-C.C. art. 99, and no waiver of this delay was ever issued; and (3) that there was a lack of consent, as required by LSA-C.C. art. 91.
We direct our attention, first, to the question of whether the marriage should be annulled because it was witnessed by only two, instead of three, witnesses. LSA-C. C. art. 105 provides:
"The marriage must be celebrated in presence of three witnesses of full age, and an act must be made of the celebration, signed by the person who celebrates the marriage, by the parties and the witnesses.
"This act must be made in duplicate and appended to the license issued in duplicate; one of these acts, appended to the license must be returned within thirty days from the date of celebration by the person celebrating the marriage to the person who granted the license, who shall file and record the same in his office."
LSA-C.C. art. 88 provides that "such marriages only are recognized by law as are contracted and solemnized according to the rules which it prescribes."
Our jurisprudence has been established to the effect that the articles of the Civil Code providing the manner and form in which marriages are to be contracted and celebrated, including the provisions of article 105 of that code, are merely directory to the celebrant, and that the failure to technically observe these formalities does not strike the marriage with nullity. Holmes v. Holmes, 6 La. 463 (1834); Succession of Hubee, 20 La.Ann. 97 (1868); Succession of St. Ange, 161 La. 1085, 109 So. 909 (1926); Russell v. Taglialavore, 153 So. 44 (La.App.2d Cir. 1934); Sabalot v. Populus, 31 La.Ann. 854 (1879); Landry v. Bellanger, 120 La. 962, 45 So. 956 (1908); Succession of Marinoni, 183 La. 776, 164 So. 797 (1935); Succession of Jene, 173 So.2d 857 (La.App.4th Cir. 1965).
In Holmes v. Holmes, supra, for instance, our Supreme Court said:
"Our code does not declare null a marriage not preceded by a license, and not evidenced by an act signed by a certain number of witnesses and the parties; nor does it make such an act exclusive evidence of a marriage. These laws relating to forms and ceremonies, here regarded as directory to those alone who are authorised to celebrate marriages, are intended to guard against hasty and inconsiderate marriages in defiance of parental authority."
Our brothers of the Second Circuit Court of Appeal observed appropriately in Russell v. Taglialavore, supra, that:
"It has been held by many cases that the articles of the Code providing the manner and method of contracting and celebrating marriages are merely directory *192 to the celebrant, and that the failure to technically observe them does not strike the marriage with nullity."
And, in Succession of Jene, supra, the Fourth Circuit Court of Appeal held:
"Our jurisprudence is that the requirement of a special license by the celebrant under Article 104 is only directory to the celebrant and a marriage which has been otherwise duly contracted and solemnized is not null for want of such a license."
We are convinced that the provisions of LSA-C.C. art. 105, requiring that the marriage be celebrated in the presence of three witnesses and that the act evidencing the celebration of that marriage be signed by three witnesses, are merely directory to the celebrant, and that the failure to observe these formalities in a wedding ceremony does not strike the marriage with nullity.
In the instant suit we agree with the trial judge that the marriage here at issue is not null and void simply because the wedding ceremony was performed in the presence of only two, instead of three, witnesses and because only two witnesses signed the marriage certificate.
In our opinion the provisions of LSA-R.S. 9:203 and LSA-C.C. art. 99, requiring that there be a delay of 72 hours between the issuance of the license and the performance of the marriage ceremony, also are merely directory, and the failure to observe this requirement does not strike the marriage with nullity.
The minister who performed the ceremony explained that prior to the celebration of the marriage the defendant handed him a document which he described as a "waiver." The minister read the document and interpreted it as being a waiver of the 72 hour delay required by the above cited statutes, whereas it actually was a waiver of the requirement that birth certificates be furnished by the parties. The evidence shows that no waiver of the 72 hour waiting period was ever issued, and that because of a misinterpretation of the above mentioned document the marriage ceremony was performed before that delay had elapsed.
This issue was considered by our Supreme Court in In Re State in Interest of Goodwin, 214 La. 1062, 39 So.2d 731 (1949). There the court held the marriage to be valid even though the ceremony was performed within the 72 hour waiting period required by LSA-C.C. art. 99. The court said:
"While this marriage was consummated in violation of Article 92 of the Revised Civil Code, as amended by Act No. 140 of 1934, which prohibits ministers and magistrates from marrying any female under the age of 16, and also in violation of Article 99, as amended by Act No. 312 of 1948, which fixes a waiting period of 72 hours after the issuance of the license during which such ministers and magistrates are prohibited from performing a marriage, there being no other impediment to the marriage, it is, nevertheless, a valid marriage under the jurisprudence of this state. State v. Golden, 210 La. 347, 26 So.2d 837; State v. Priest, [210 La. 389, 27 So.2d 173] supra. The redactors of our code and the legislature in amending these articles did not provide for the nullity of the marriages performed in violation thereof, but, instead, provided in the former case for the removal from office of the magistrate performing a ceremony in violation thereof and for the suspension forever of the minister's right to perform such ceremonies, and, in the latter case, for the revocation of the right to perform a marriage for one year.
Penalties are provided for the violation of LSA-R.S. 9:203 and LSA-C.C. art. 99, but there is no statutory provision that the marriage will be void or that it will not be *193 recognized in the event of such a violation. In our opinion a provision to the effect that the marriage will not be recognized if performed within that 72 hour period would have been included in at least one of these two statutes if the legislature had intended that a failure to observe that requirement was to have the effect of invalidating the marriage.
We agree with the trial judge that the marriage may not be annulled on the ground that the 72 hour waiting period required by law was not observed.
Plaintiff contends, finally, that the marriage is null because of a failure of consent. She testified that she has been an alcoholic for 20 years, that she had abstained completely for almost 15 years, but that she had gone back to drinking and had been under the influence of alcohol for a period of about two and one-half months immediately prior to the date on which the marriage ceremony was performed.
Plaintiff, a widow 50 years of age, stated that on the morning of November 28, 1967, at defendant's invitation, she accompanied him in his automobile from her home in Tallulah to Eunice, Louisiana, where defendant planned to visit his daughter. She testified that she has no recollection of anything that transpired on that trip, except that when she awoke the next morning she was in a motel room with defendant and she learned at that time that a marriage ceremony had been performed the previous night. The evidence shows that both parties had remained almost fully clothed during the entire night, and that there had been no cohabitation between them. They separated immediately and have not lived together at any time since the ceremony was performed.
Rev. Carter, who performed the marriage ceremony, testified that some time during the afternoon on November 28, 1967, plaintiff and defendant went to his home and informed his wife that they wanted the minister to perform a ceremony uniting them in marriage. They were requested to return about 5:30 or 6:00 that afternoon in order that they could discuss the matter with the minister. The parties returned to the Carter residence at the time suggested, but the minister again delayed them, asking that they return later because he had to eat supper and attend a meeting. They returned about 8:00 that evening and presented the minister with a marriage license and with a request that Rev. Carter perform the marriage ceremony.
The minister then talked to both parties for a period of from 20 to 30 minutes about the prospective marriage before he would consent to perform the ceremony. He testified that during these conversations he could tell that both of the parties had been drinking, but he stated that plaintiff answered the questions that he propounded to her and he concluded that she knew what she was doing. There were only two circumstances which caused him to question the mental attitude of the parties. One was the fact that plaintiff was dressed in slacks. She apologized for the way in which she was dressed, however, and she stated that she realized that it was not the right sort of dress to be worn for such an occasion. The other circumstance was that Mrs. Parker mentioned several times that she needed to get back to Tallulah as soon as possible. Rev. Carter, however, completely satisfied himself after talking to the parties that they fully understood what they were doing and that they were sincere in their desire to get married, and after doing so he proceeded to perform the ceremony.
The trial judge concluded that plaintiff had failed to overthrow the strong presumption of the validity of the marriage. In concluding that the evidence did not show a failure of consent to the marriage, the trial judge said:
"It is true that plaintiff smelled of alcohol, however, she has not established intoxication to an extent where she *194 would be deprived of the ability to know what she was doing."
Our courts are reluctant to invalidate a marriage, and they will not do so unless the law and the facts clearly indicate that it should be annulled. Douglas v. Shepard, 193 So. 264 (La.App.2d Cir. 1939); Succession of Gaines, 227 La. 318, 79 So.2d 322 (1955).
Also, the established rule is that the trial judge's findings of fact, particularly those involving the credibility of witnesses testifying before him, are entitled to great weight and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Gulf Machine Shop v. Poynter, 192 So.2d 606 (La.App.3d Cir. 1966).
In the instant suit the trial judge had the opportunity of observing the demeanor of plaintiff and the other witnesses who testified at the trial. We are unable to say that he erred in his conclusion that plaintiff fully understood what she was doing at the time the marriage ceremony was performed, and that she has not established that there was a failure of consent.
For the reasons herein assigned the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed. *333