HOOD, Judge.
Mr. and Mrs. Ophelias Joseph Bourque instituted this adoption proceeding originally on April 28, 1970, seeking to adopt two young children, Yolanda Kim Mallett and Brendall Louis Mallett. Pursuant to the prayer contained in their original petition, an interlocutory decree of adoption was rendered by the trial court on May 18, 1970, granting to Mr. and Mrs. Bourque the temporary custody of those two children.
After that interlocutory decree was granted, Mr. and Mrs. Horace R. Spell filed a petition in the same proceeding demanding that the above mentioned interlocutory decree dated May 18, 1970, be revoked and set aside, and that plaintiffs, Mr. and Mrs. Spell, be granted the temporary custody of the two Mallett children. The principal defendants in the present action are Mr. and Mrs. Bourque. Judgment was rendered by the trial court on July 23, 1970, in favor of defendants, dismissing plaintiffs’ suit to have the interlocutory decree set aside. Plaintiffs, Mr. and Mrs. Spell, have appealed.
The principal issues presented are whether the interlocutory decree of adoption rendered on May 18, 1970, is valid, and if so, whether the best interests of the children would be served by revoking that decree and awarding the temporary custody of these children to plaintiffs.
The adoptive children, Yolanda Kim Mallett and Brendall Louis Mallett, were born out of wedlock to Barbara Ann Mal-lett on April 14, 1966, and on February 15, 1968, respectively. The father of neither child is known. The mother, Barbara Ann Mallett, died on January 17, 1970, as the result of an automobile accident. At the time of her death, Barbara Mallett was living with her mother, Mrs. Isabel Cormier Mallett, in Lake Arthur, Louisiana.
Shortly after Barbara’s death, Mrs. Isabel Mallett decided that she could not or did not want to keep her two grandchildren, so she began interviewing couples whom she thought might be interested in adopting them. She testified that at least 14 couples expressed a desire to adopt both children. Mr. and Mrs. Bourque, defendants in the present action, were among those who expressed such an interest.
On February 8, 1970, Mrs. Mallett permitted Mr. and Mrs. Bourque to take the children to their home in Mermentau, Louisiana, for a short visit. One week later, on February 15, 1970, Mrs. Mallett informed the Bourques that they could keep the two children permanently, provided that Mrs. Mallett was granted “the right to visit the children at least once a week for a while and then I’d come down to maybe every two weeks and gradually get away from the kids.” The Bourques orally agreed, and Mrs. Mallett visited the children regularly during the months of February, March and a part of April, 1970.
During the month of April, however, Mrs. Mallett became dissatisfied with that arrangement, and on April 28, 1970, she requested that the Bourques return her grandchildren to her. This request was refused by defendants, and on the same day Mr. and Mrs. Bourque instituted these adoption proceedings. As we have already noted, an interlocutory decree of adoption was rendered on May 18, 1970, granting the temporary custody of the children to Mr. and Mrs. Bourque.
Shortly after plaintiffs instituted these adoption proceedings, Mrs. Mallett filed a petition in the 31st Judicial District Court, in Jefferson Davis Parish, demanding that she be appointed as Dative Tutrix for the children. An order was issued on May 26, 1970, making that appointment. Mrs. Mal-lett then instituted habeas corpus proceedings against Mr. and Mrs. Bourque on June 11, 1970, seeking the custody of the children, but she voluntarily dismissed those proceedings on June 22, 1970. Three days later, on June 25, Mr. and Mrs. Spell instituted the instant suit to set aside the above mentioned interlocutory decree and *528 to award the temporary custody of the children to the Spells.
The matter was tried on July 9, 1970, but the trial was limited to the issue of whether the interlocutory decree of adoption rendered on May 18, 1970, should be revoked and set aside. Following the trial, the juvenile court refused to set aside that decree, and Mr. and Mrs. Spell appealed.
Plaintiffs contend, first, that the interlocutory decree rendered by the trial court on May 18, 1970, granting custody of the children to Mr. and Mrs. Bourque, is an absolute nullity because plaintiffs failed to attach to their original petition for adoption a copy of the original birth certificate of each child.
LSA-R.S. 9:422.2 provides that prior to the initiation of an adoption proceeding the attorney shall request a certified copy of the child’s birth certificate, and that “this certified copy of the child’s original birth certificate shall be forwarded to the attorney for petitioners, who in turn must attach the same to his petition for adoption." Plaintiffs argue that in view of the above quoted statutory provision, it is mandatory that a copy of the birth certificate be attached to the original petition of adoption, and that the failure of the Bourques to comply with that requirement renders the interlocutory decree an absolute nullity.
We agree with plaintiffs that the statute makes it mandatory that a copy of the birth certificate of each child be attached to the original petition for adoption. We believe that that requirement is merely directory, however, and that the failure to comply with it does not render the interlocutory decree an absolute nullity. See Parker v. Saileau, 213 So.2d 190 (La.App. 3 Cir. 1968), and cases cited therein.
In Parker v. Saileau, supra, we held that the provisions of LSA-C.C. art. 105, relating to the manner and form in which marriages are to be celebrated, although clearly mandatory, were merely directory to the celebrant, and that the failure to technically observe these formalities did not strike the marriage with nullity. In our opinion, the same rule should be applied here.
In the instant suit, we feel that the failure of the Bourques to attach copies of the birth certificates of the children to their original petition for adoption was a harmless error. The record shows that a birth certificate had been issued for each child, and that the Spells as well as the Bourques were familiar with the provisions of each of these certificates. In the petition filed in the instant suit, for instance, Mr. and Mrs. Spell allege “that petitioners wish to adopt Brendall Louis Mallett and Yolanda Kim Mallett, children under seventeen years of age, birth certificates having been previously filed herein * * The evidence introduced at the trial also shows that all interested parties were fully aware of the facts which would have been disclosed by birth certificates.
We conclude that the failure of defendants, Mr. and Mrs. Bourque, to attach copies of the birth certificates of the two children to their original petition for adoption did not strike the interlocutory decree rendered on May 18, 1970, with nullity.
Plaintiffs contend, alternatively, that Mr. and Mrs. Bourque are unfit to become adoptive parents, and that the best interests of the children would be served by setting aside the interlocutory decree heretofore rendered and awarding the custody of such children to plaintiffs, Mr. and Mrs. Spell.
The trial judge is vested with some discretion in determining whether an interlocutory decree of adoption should or should not be granted. LSA-R.S. 9:429. The law provides that the “basic consideration” for determining whether an interlocutory decree should be granted “shall be the best interest of the child.” LSA-R.S. 9:432 subd. B. And, LSA-R.S. 9:431 provides that “at any time before the entry of. the final decree of adoption the court for *529 good cause * * * may revoke its interlocutory decree either on its own motion or on the motion of the department or on motion of the petitioner or any person interested in the child.” We interpret these statutory provisions to mean that an interlocutory decree of adoption may be revoked if the evidence establishes that the adoptive parents are unfit, or that it would be to the best interests of the child that such a decree be revoked.
A factual issue is presented here, therefore, as to whether Mr. and Mrs. Bourque are unfit to have the custody of these children and eventually to adopt them, or whether it would be to the best interests of the children for the original interlocutory decree to be revoked and for the custody of the children to be removed from the Bourques.
Mr. Bourque is 28 years of age and Mrs. Bourque is 33. They were married on October 16, 1965. Both are natives of Louisiana. They are of French ancestry and, like the adoptive children, are of the Catholic faith. They reside in a relatively large rented home in Mermentau, Louisiana. The home is a frame building, consisting of three bedrooms, two baths, a den and a front room. The evidence convinces us that the home is adequately furnished, it is in good condition and the housekeeping standards are excellent.
The adoptive father, Mr. Bourque, dropped out of school when he was in the eleventh grade. Shortly thereafter he entered military service and remained in that service for eight years. He obtained the rank of Staff Sergeant and was honorably discharged on September 28, 1968. Shortly after his discharge he obtained employment as a roustabout on an offshore drilling platform, but about 25 days later he sustained a serious and disabling injury during the course of his employment. For about 16 months thereafter his only income consisted of “insurance payments” of $70.00 per week. He settled his injury claim for $11,000.00, however, and by the time of the trial he was employed regularly at a housing project earning about $120.00 per week. He and his wife had over $2500.00 in the bank at the time of the trial. They own their furniture and two automobiles, all of which is fully paid for, and they owe no debts except for a current $56.00 medical bill.
Mr. Bourque has been married three times. He first married Lorita Ann Matthews on April 3, 1960, and they were divorced on June 18, 1964. Two children were born of that union, one of whom died, and the other is in the custody of the mother. He then married Emma Jean Murray while he was stationed in Missouri, but he was divorced from her shortly thereafter. No children were born of that union. He married his present wife on October 16, 1965, and that marriage appears to be a happy and stable one.
. The present Mrs. Bourque has a tenth grade education. This is her first marriage. She has had no children, although she has had three miscarriages, and she feels that she is unable to bear a child. The evidence convinces us that she wants children very much, that she loves the two children whom she seeks to adopt, and that she has given the children excellent supervision and care.
Plaintiffs argue that the Bourques are unfit to adopt the children for several reasons. They contend that Mr. Bourque’s second marriage was bigamous, that he has failed to support the surviving child of his first marriage although he was under court order to do so, that he is unstable in that he has moved three times in two years, and that defendants are not providing the children with adequate religious training.
The evidence does not show that Mr. Bourque entered into a bigamous marriage. Plaintiffs point out, correctly, that at one place in his testimony he gave the date of his second marriage as being in 1963, while *530 the evidence shows that he was not divorced from his first wife until 1964. He explained later in his testimony, however, that he had merely become confused as to the date, and that he did not enter into the second marriage until after his divorce had become final. No records of any kind were offered to show the date of his second marriage, although he specified exactly where that marriage took place and where the divorce was obtained. We are not convinced, on the basis of the evidence presented here, that Bourque entered into a bigamous marriage.
The evidence shows that Bourque supported the surviving child of his first marriage to the extent ordered by the court, until after he was injured during the latter part of 1968. He has not made the $5.00 per week payments due pursuant to the court order since January 1, 1969. He explained that his first wife told him that she did not need the payments any more. The first Mrs. Bourque denies that, but she states that she decided “not to go back to court again” when Bourque agreed to settle up all past due payments when his insurance claim was settled. We consider Bourque’s explanation to be unsatisfactory, and the failure to make the support payments to be unjustified. Considering the fact, however, that he had just returned from military service, that he had suffered a disabling injury and a slight reduction in his,income shortly before he began to default in his payments and that his first wife had remarried and apparently was taking good care of the child without his help, we do not feel that his failure to make the small support payments which had been ordered indicates such irresponsibility, callousness or lack,of compassion as to warrant a holding that he and his wife are unfit to have the custody of other children.
The evidence shows that after Mr. Bourque was discharged from the Army in 1968, he lived in Crowley and in Jennings before he moved to his present home in Mermentau, Louisiana. All of these communities are in the same general area. We have already noted that Bourque had just returned from military service, it was necessary for him to obtain employment and to re-establish a home in civilian life, and then he was disabled. All of this occurred within a short time after his Army discharge. Under those circumstances, we do not find that the fact that he has moved three times in two years indicates any un-stableness on his part or on the part of his wife.
The evidence shows that the Bourques have attended church only twice since they have had the custody of the children, that one child has attended only once, and that the other child has not attended at all. We agree with plaintiffs that the Bourques are not providing the children with adequate religious training. We do not find that this circumstance would justify the revoking of the interlocutory decree which is being attacked here, but it is an important factor which may be considered if and when the matter comes up later on an application for final adoption.
The evidence convinces us that Mr. and Mrs. Bourque are happily married, and that they are financially able to care for these adoptive children. The children have been living with the Bourques since February, 1970, and during that time defendants have provided them with all of the medical attention they have needed, with a good home, with proper food, clothing and toys, and with parental love. Our conclusion is that plaintiffs have failed to show that Mr. and Mrs. Bourque are unfit to have the custody of these children.
The evidence does not convince us that it would be to the best interests of the children to remove them from the custody of defendants and place them in the custody of Mr. and Mrs. Spell. Mrs. Spell was a *531 sister to the deceased mother of these children, and thus she is their maternal aunt. She dropped out of school while she was in the eighth grade, and she married Mr. Spell when she was 15 years of age. He was 19 at the time. Two children have been born of that union.
Mr. Spell is employed at a shipyard in Jennings, earning a salary of approximately $500.00 per month. He and his wife live in a house trailer which is situated on a six and one-half acre tract of land owned by Spell. He owes debts aggregating about $6,000.00 secured by mortgages on the land and the trailer, and he owes about $500.00 on a bank note. Their trailer home is relatively small, having two bedrooms and about 600 square feet of living space in it. If the custody of these two children should be awarded to the Spells, it would mean that two adults and four children must be accommodated in that trailer.
Although the Spells appear to be morally fit and financially able to care for the children, the evidence does not convince us that they are better able to do so than are the defendants. We believe, as did the trial judge, that the best interests of the children would be served by allowing them to remain in the defendants’ custody and in their home, where the children have resided for the past year.
We cannot say that the trial judge erred in awarding the temporary custody of these children to Mr. and Mrs. Bourque, or in refusing to revoke the interlocutory decree which was rendered on May 18, 1970, granting the temporary custody of these children to the defendants.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.