STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CU 1342

KRISTIN DELEO

VERSUS

LINDSEY MARIE NICOLINI

Judgment Rendered: **AUG 2 1 2024**

* * * * *

Appealed from the
21st Judicial District Court
Parish of Tangipahoa, State of Louisiana
No. 2022-1866

The Honorable Jeffrey Cashe, Judge Presiding

* * * * *

Craig J. Robichaux
Lindsey S. Olsen
Mandeville, Louisiana

Attorneys for Plaintiff/Appellant,
Kristin Deleo


Nicole R. Dillon
Glen R. Galbraith
Morgan J. Brown
Hammond, Louisiana

Attorneys for Defendant/Appellee,
Lindsey Marie Nicolini

* * * * *

BEFORE: GUIDRY, C.J., McCLENDON, WELCH,
WOLFE, AND STROMBERG, JJ.

Stromberg dissents & assigns reasons
McClendon, J. Agrees and Assigns Additional Reason.

**WOLFE, J.**

Kristin Deleo appeals the trial court's declaratory judgment that denied her petition for nullity and declared that her marriage to Lindsey Marie Nicolini was valid.[1] We reverse the trial court's judgment and render judgment declaring the marriage an absolute nullity.

## FACTS

Ms. Deleo and Ms. Nicolini were involved in a romantic relationship and, on the evening of July 21, 2019, participated in a "spiritual" marriage ceremony in front of family and friends at their home. Ms. Deleo was eight months pregnant with a child conceived by in vitro fertilization and the couple had been told that they needed to be married for Ms. Nicolini's name to appear on the baby's birth certificate. The ceremony was performed by Ms. Nicolini's friend, Vanessa Coombe, who advised the couple that she was ordained, but not yet registered as an ordained minister in Louisiana, which she explained to them meant that she could not sign the couple's marriage certificate.

Ms. Deleo and Ms. Nicolini signed a marriage certificate that indicated the wedding ceremony took place on July 21, 2019, at 6:00 p.m.[2] Ms. Coombe signed as a witness rather than the officiant. Instead, Ms. Coombe's friend, Walter Rustin Loyd, who was authorized to perform marriages in Louisiana, but was not present at the July 21 ceremony, signed as the officiant. The parties now dispute when, where, and under what circumstances that document was signed, and whether any ceremony was actually performed by Mr. Loyd.

Ms. Deleo filed a petition seeking a declaration that the parties' "marriage" was an absolute nullity, contending that Mr. Loyd did not officiate any ceremony

---

[1]    In the record, Ms. Deleo's last name is also spelled "Delao," and Ms. Nicolini's first name is also spelled "Lindsay."

[2]    The document is entitled "Certificate of Marriage" and was alternately referenced throughout this proceeding as a marriage certificate and marriage license.

between the parties. In contrast, Ms. Nicolini maintains that the parties went to Mr. Loyd's home on July 22, 2019, the day after the spiritual ceremony, where a second "official ceremony" was held. Ms. Nicolini characterized the July 21 date on the marriage certificate as a clerical error that did not affect the validity of the marriage. After an evidentiary hearing, the trial court denied Ms. Deleo's requested relief and, on April 25, 2023, signed a judgment that declared the marriage valid.

Ms. Deleo now appeals.[3]

## DISCUSSION

Marriage is a legal relationship created by a civil contract that is subject to special rules prescribed by law. See La. Civ. Code art. 86. Under Louisiana law, the three requirements for a valid contract of marriage are: 1) the absence of any legal impediment; 2) a marriage ceremony; and 3) the free consent of the parties to take each other as husband and wife as expressed at the ceremony. La. Civ. Code art. 87. A marriage ceremony requires the participation of both parties and a third person who is qualified, or reasonably believed by the parties to be qualified, to perform the marriage ceremony. All three persons must be physically present at the ceremony when it is performed. La. Civ. Code art. 91. While recognized as a common-law marriage in other jurisdictions, a marriage contracted without a ceremony in Louisiana is absolutely null. See La. Civ. Code art. 94; **Ghassemi v. Ghassemi**, 2007-1927 (La. App. 1st Cir. 10/15/08), 998 So.2d 731, 743, writs denied, 2008-2674 and 2008-2675 (La. 1/16/09), 998 So.2d 104. When a marriage is absolutely null, a judicial declaration of nullity is not required; however, an action to recognize the nullity may be brought by any interested person. La. Civ. Code art. 94.

---

[3] A judgment granting or refusing an annulment of marriage is an appealable judgment. See La. Code Civ. P. art. 3492. Out of an abundance of caution, the appellate record has also been supplemented with an order of the trial court that certified the judgment as final. See La. Code Civ. P. art. 1915(B).

Ms. Deleo testified that she and Ms. Nicolini signed the marriage certificate immediately after the wedding performed by Ms. Coombe on July 21, and that their friend, Allie Revere, and Ms. Coombe signed as witnesses at the same time. Ms. Deleo's mother testified that she was present and saw the couple and witnesses sign the certificate immediately after the July 21 ceremony. According to Ms. Deleo, the name of the officiant was left blank.

During her deposition testimony, Ms. Deleo explained it was her understanding that, although Ms. Coombe was not yet "fully register[ed]" to perform marriages, Ms. Coombe "could work under somebody and that … somebody would sign." At the hearing, Ms. Deleo testified that Ms. Coombe reached out to Mr. Loyd to "see if he would be willing to sign for [them]." Ms. Coombe confirmed that she sent Mr. Loyd a message through Facebook on the morning of July 21, in which she stated "They need to be married, like, later today. Are you free? I can do the ceremony, but I need you to sign the marriage certificate." Mr. Loyd responded, "Oh yeah. For sure. I'll sign it." After Ms. Coombe thanked him, Mr. Loyd responded "It's as easy as a signature. Not a problem."

Mr. Loyd signed the marriage certificate as the officiant; however, Ms. Deleo averred that he did so outside of her presence. During her deposition testimony, Ms. Deleo denied being told that she needed to appear in front of Mr. Loyd to execute the marriage certificate or participating in any ceremony officiated by Mr. Loyd. At the hearing, as she did during her deposition testimony, Ms. Deleo denied going to Mr. Loyd's house or even meeting Mr. Loyd outside of this court proceeding. At the hearing, Ms. Deleo testified that the first time she heard anything about having gone to Mr. Loyd's house was approximately a month before the depositions conducted in relation to this proceeding, when Ms. Nicolini asked her questions suggesting that she should remember going there.

In their depositions, Ms. Nicolini, Ms. Coombe, Ms. Revere (who was then in a romantic relationship with Ms. Nicolini), and Mr. Loyd testified that Ms. Deleo and Ms. Nicolini participated in a second short "legal" ceremony that took place at Mr. Loyd's house, during which the couple affirmed their intent to marry. Ms. Nicolini, Ms. Coombe, and Ms. Revere all agreed that the ceremony took place on July 22, between 6:00 and 6:30 p.m. Mr. Loyd could not recall if the ceremony that he officiated took place on July 21 or July 22, or the time that it took place. Mr. Loyd admittedly did not verify the identities of the couple who participated in the ceremony; however, Ms. Nicolini, Ms. Coombe, and Ms. Revere all testified that Ms. Deleo and Ms. Nicolini were the participants.

Ms. Deleo testified during her deposition and at trial that she worked as an emergency room nurse at Ochsner Baptist Medical Center in New Orleans, and on July 22, 2019, was scheduled to work a twelve-hour shift beginning at 6:45 a.m. She presented evidence from her employer that her shift was scheduled to end at 7:15 p.m., and that she clocked out at 7:26 p.m. Ms. Deleo explained that her employer used software that required employees to clock out by scanning their badge or their fingerprint, or by having their supervisor clock out for them after the employee completed a "missed punch" form. A text message exchange with a co-worker confirmed that Ms. Deleo worked until after 7:00 p.m. Ms. Deleo testified that she typically called Ms. Nicolini during her drive home to Hammond, which took approximately one hour to one hour and ten minutes. Ms. Deleo stated that she called Ms. Nicolini at 7:17 p.m., and they spoke for eleven minutes. She then sent a text message update at 7:45 p.m., which stated "Off the spillway." At trial, Ms. Deleo acknowledged that the timing of text message and phone calls showed that she most likely had to do a missed punch form; however, none was presented as evidence.

5

In addition to the evidence that showed Ms. Deleo was at work and could not have been at Mr. Loyd's house at the time of the alleged second ceremony, copies of text messages were introduced into evidence that showed that Ms. Nicolini and Ms. Revere were grocery shopping at 6:00 p.m. on July 22.

When questioned at the hearing about the specific timeline of alleged events on July 22, Ms. Nicolini acknowledged the "discrepancy" in her deposition testimony and attempted to explain it, stating that she recalled seeing the time of 6:00 p.m. on the marriage certificate and "thought that we went earlier [to Mr. Loyd's] than what we did." She testified that she got off of work around 5:00 p.m., went to the grocery store, then waited for Ms. Deleo to get home. She stated she believed that Ms. Deleo left work between 7:00 and 7:15 p.m., and called at 7:17 p.m., which meant Ms. Deleo was in the car beginning the drive home. She stated that Ms. Deleo was "off the spillway right around 7:45," which was the halfway point of the drive, and that Ms. Deleo arrived home at around 8:15 p.m. Ms. Nicolini affirmed that she, Ms. Deleo, and Ms. Revere drove together to Mr. Loyd's house, which was also in Hammond and less than a ten-minute drive from the home she and Ms. Deleo shared.

Ms. Nicolini recalled that it was still light outside when they arrived at Mr. Loyd's house, though her internet research showed that the sun set at 8:02 p.m. that evening. Ms. Nicolini also stated that her interpretation of her own Facebook analytics indicated that she did not use her phone between 8:00 and 8:42 p.m. that night.

Ms. Revere testified at the hearing that she traveled with Ms. Nicolini and Ms. Deleo from their house to Mr. Loyd's house on July 22. She recalled testifying in her deposition that the event occurred between 5:30 and 6:30 and gave no response when questioned about the text message she sent at 6:32 p.m. about the grocery trip. She stated that she could not recall the specific time they left for the ceremony at

Mr. Loyd's house, only that it was still light outside when they arrived at his house. She also acknowledged that none of the text messages confirmed that she went to Mr. Loyd's house at all.

At the hearing, Ms. Coombe testified that she went to Mr. Loyd's house from work, which was located in Mandeville, close to Abita Springs. She stated that she probably "got off from work" at about 5:00 p.m. She thought that it was light outside when she arrived at Mr. Loyd's and that she stayed there only fifteen to twenty minutes.

At the conclusion of the hearing, the trial court observed that there were "two different stories" and that "[s]omebody [was] just not being honest." The trial court then stated that its credibility determination was that "there was a ceremony," noting that Mr. Loyd and "all of these other people" said they were "at this house." Thus, the trial court found that there was a valid marriage between Ms. Deleo and Ms. Nicolini.

We recognize that the manifest error standard demands great deference to the trial court's factual findings that are based on determinations regarding the credibility of witnesses because the trial court had the opportunity to observe the variations in demeanor and tone of voice that bear so heavily on understanding the witnesses' testimony. See **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). However, even when a factual finding is purportedly based upon a credibility determination, an appellate court may find manifest error when the witnesses' testimony is contradicted by the evidence or is so internally inconsistent or implausible on its face, that it cannot reasonably be credited. See **Id.** After careful review, we find that such is the case here.

Although Ms. Nicolini's version of events had the greater number of general supporters, it was internally inconsistent and contradicted by other evidence. Her first version of events—that a second ceremony took place on Monday between 6:00

7

and 6:30 p.m.—was disproved not only by objective evidence that Ms. Deleo was at work during that time, but also by Ms. Nicolini's own text messages that showed she was grocery shopping with Ms. Revere. When that evidence became apparent, Ms. Nicolini claimed that the ceremony at Mr. Loyd's house took place after Ms. Deleo returned home from work.

Ms. Nicolini's testimony at the hearing presented the following timeline of events. The sun set at 8:02 p.m. Based on Ms. Deleo's text message that she was "off the spillway" at 7:45 p.m., Ms. Deleo arrived home at 8:15 p.m. Ms. Nicolini, Ms. Deleo, and Ms. Revere then made the approximately seven-minute drive to Mr. Loyd's house, arriving while it was still light outside. A short ceremony where the couple affirmed their intent to marry took place before 8:42, when Ms. Nicolini accessed her Facebook account. While at Mr. Loyd's house, everyone signed the marriage certificate. A text message confirmed that Ms. Nicolini and Ms. Deleo were at their home by 9:00.

Ms. Revere, Ms. Coombe, and Mr. Loyd generally agreed that a second ceremony took place; however, their testimony did not support the timeline Ms. Nicolini's testimony established at the hearing. Ms. Coombe recalled going to Mr. Loyd's house after leaving work at approximately 5:00 p.m. Ms. Revere could not recall any specifics of the second ceremony after confirming that she sent a text message about groceries at the time she previously attested that the ceremony at Mr. Loyd's occurred. Mr. Loyd could not recall any details regarding the time and date of the ceremony he said he performed.

Additionally, despite the numerous text messages between Ms. Nicolini, Ms. Deleo, and Ms. Revere from July 22 that were introduced into evidence, none referenced them going to Mr. Loyd's house—a place none of them had previously been—for the second ceremony. Nor did Ms. Nicolini produce any evidence of communications with Ms. Coombe and Mr. Loyd confirming the time, place, or

details of a July 22 ceremony at Mr. Loyd's house. The only documentary evidence of a ceremony performed by Mr. Loyd was the marriage certificate itself, which everyone agreed contained erroneous information. No pictures or other documentation was offered.

The entirety of the evidence discredits Ms. Nicolini's testimony that she and Ms. Deleo participated in a second ceremony performed by Mr. Loyd on July 22, after Ms. Deleo, who was in the advanced stages of her pregnancy, returned home from work. Since both Ms. Deleo and Ms. Nicolini agree that the July 21 ceremony performed by Ms. Coombe was without legal effect, we find that the trial court erred in declaring that the marriage between Ms. Deleo and Ms. Nicolini was valid. This is not a case of a simple clerical error on a marriage certificate; rather, one of the three requirements of a valid marriage under Louisiana law is lacking. See La. Civ. Code art. 87.

We note that on appeal, Ms. Nicolini argues that Ms. Deleo judicially confessed that the two were married in pleadings she filed in this case. A judicial confession is a party's explicit admission of an adverse *factual* element. **Cichirillo v. Avondale Industries, Inc.**, 2004-2894 (La. 11/29/05), 917 So.2d 424, 429. Under Louisiana law, a marriage contracted without a marriage ceremony is absolutely null. La. Civ. Code art. 94. While other states recognize marriages confected without a ceremony as valid common law marriages, Louisiana does not. See **Ghassemi**, 998 So.2d at 743. Thus, any prior assertion by Ms. Deleo that the marriage was valid is immaterial.

Ms. Nicolini further argues that Ms. Deleo believed she was married when she filed the marriage certificate with the clerk of court and when she listed Ms. Nicolini's name on the baby's birth certificate, noting that knowingly filing a document containing a false statement in any public office is a felony. See La. R.S. 14:133. Ms. Nicolini contends that since she too had the honest and reasonable

9

belief that they were married, the civil effects of a valid marriage should flow to her.[4] However, these arguments are beyond the scope of this appeal, which is limited solely to the question of whether the marriage was absolutely null.

## CONCLUSION

For the foregoing reasons, the trial court's April 25, 2023 judgment that declared valid the marriage between Kristin Deleo and Lindsey Marie Nicolini is reversed. Judgment is rendered recognizing the absolute nullity of the marriage. All costs of this appeal are assessed to Lindsey Marie Nicolini.

**REVERSED AND RENDERED.**

---

[4]   In this regard, Ms. Nicolini argues that the provision of La. Civ. Code art. 96, which states that a purported marriage between same-sex couples produces no civil effects, is invalid after the United States Supreme Court's decision in **Obergefell v. Hodges**, 576 U.S. 644, 647, 135 S.Ct. 2584, 2591, 192 L.Ed.2d 609 (2015).

KRISTIN DELEO

VERSUS

LINDSEY MARIE NICOLINI

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CU 1342

**STROMBERG, J., dissents.**

I respectfully dissent from the majority opinion. Our courts are reluctant to invalidate a marriage, and they will not do so unless the law and the facts clearly indicate that it should be annulled. **Tennison v. Nevels**, 2006-2124 (La. App. 1 Cir. 6/8/07), 965 So.2d 425, 427; **Parker v. Saileau**, 213 So.2d 190, 194 (La. App. 3 Cir. 1968). This litigation began when Ms. Deleo filed a petition for divorce pursuant to La. C.C. art. 102 on the basis that a valid marriage existed, contrary to her later position that the marriage should be annulled. In finding the marriage valid, the trial court specifically found the testimony of the witnesses, officiant, and Ms. Nicolini credible. Notably, Ms. Deleo filed the marriage certificate with the Clerk of Court the day after the formal ceremony.

I find no manifest error in the trial court's factual conclusions that a valid marriage ceremony occurred. As the majority recognizes, an appellate court may not set aside a trial court's findings of fact unless a reasonable factual basis does not exist for the findings and, further, a review of the entire record shows that the factual findings are clearly wrong. See **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). Additionally, where the fact-finder's determination is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous. **Purvis v. Grant Parish School Board**, 2013-1424 (La. 2/14/14), 144 So.3d 922, 926. Accordingly, I would affirm the judgment of the trial court denying Ms. Deleo's request to nullify the marriage and deeming the marriage between Ms. Deleo and Ms. Nicolini valid.

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 CU 1342

## KRISTIN DELEO

### VERSUS

## LINDSEY MARIE NICOLINI

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., agrees and assigns additional reasons.**

Pursuant to LSA-C.C. art. 87, a marriage ceremony is one of the requirements for a valid marriage. With regard to the marriage ceremony, LSA-C.C. art. 91 provides, in pertinent part, that "[t]he parties must participate in a marriage ceremony performed by a third person who is qualified, or reasonably believed by the parties to be qualified, to perform the ceremony." Thus, a valid marriage may exist, even where the officiant is not qualified, if the parties reasonably believe the officiant to be qualified. Nevertheless, because the appellant does not raise this issue as an assignment of error or argue same, I do not address it at this time.