IN THE SUPREME COURT OF THE STATE OF DELAWARE

RUSSELL L. LAFON, SR., AS §
PERSONAL REPRESENTATIVE §
OF THE ESTATE OF §
RUSSELL L. LAFON, JR., §
§
    Petitioner Below, § No. 217, 2025
    Appellant, §
§ Court Below: Court of Chancery
    v. § of the State of Delaware
§
JACQUELINE MARIE FELMLEE, § C.A. No. 2023-0998
§
    Respondent Below, §
    Appellee. §

Submitted: November 5, 2025
Decided: January 27, 2026

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

Upon appeal from the Court of Chancery. **AFFIRMED.**

Paul E. Bilodeau, Esquire, Kathleen DeLacy, Esquire, Martin D. Page, Esquire. REGER RIZZO & DARNALL, LLP, Wilmington, Delaware, *for Petitioner Below, Appellant Russell L. LaFon, Sr., as Personal Representative of the Estate of Russell L. LaFon, Jr.*

Jason C. Powell, Esquire, Laurel A. LaLone, Esquire, THE POWELL FIRM, LLC, Wilmington, Delaware, *for Respondent Below, Appellee Jacqueline Marie Felmlee.*

**TRAYNOR**, Justice:

On Valentine's Day, 2023, Russell L. LaFon, Jr. and Appellee Jacqueline Marie Felmlee exchanged marriage vows on a dock at Woodland Beach in a ceremony officiated by a minister authorized to solemnize marriages.[1] Five months later, LaFon (the "Decedent") passed away unexpectedly at the age of thirty-four. Appellant Russell L. LaFon, Sr. (the "Petitioner") is the father of the Decedent and acts as the personal representative of his son's estate.

The Decedent's father and widow are at odds regarding the Decedent's personal property and home. The Petitioner sought a declaratory judgment in the Court of Chancery that Ms. LaFon was not the legal spouse of the Decedent, alleging that their marriage was not solemnized in the presence of at least two reputable witnesses who are at least 18 years of age as required under 13 *Del. C.* § 106(a)(4). The Petitioner sought to prevent Ms. LaFon from qualifying as the Decedent's surviving spouse and heir under Delaware's intestacy statutes.

The Court of Chancery treated the Petitioner's request for declaratory relief as functionally equivalent to a petition for annulment of the marriage under the Delaware Divorce and Annulment Act (the "Act").[2] The Act specifies that an annulment may not be sought after the death of either party to the marriage except

---

[1] Ms. Felmlee has legally changed her name to "Jacqueline Marie LaFon." In this opinion we refer to her as "Ms. LaFon."
[2] 13 *Del. C.*, ch. 15.

in certain limited circumstances set forth in the statute. According to the court, the Petitioner lacked standing to seek an annulment under any of the circumstances identified in the Act. Hence, the court denied the Petitioner's application for declaratory relief.

The Petitioner now argues that the court's approach was improper because a statutory requirement for the solemnization of a marriage—the presence of two witnesses at the wedding ceremony—was not met. The couple's failure to meet this requirement, the Petitioner argues, necessarily means that the purported marriage was void and that the court therefore erred in applying the Act, as it applies only to marriages. Essentially, the Petitioner argues that no marriage ever existed and so the Act's standing restrictions cannot apply. As we explain below, under the facts of this case, the couple's failure to meet the witness requirement does not invalidate their marriage. This deals a mortal blow to the Petitioner's argument. Accordingly, we affirm the Court of Chancery's judgment.

## I

In 2018, Russell L. LaFon, Jr. and Jacqueline Marie Felmlee began dating. After five years together, the couple wed on a dock at Woodland Beach on a cold and dark February night. The only other person standing on the dock with the couple and their officiant, Ronald Teague, was M.L., the Decedent's minor son. The couple presented Teague with a marriage license that had been signed earlier that day by

3

two witnesses, Lynne Holt and Marcella Reilly. Guests were advised that they were welcome to remain in their vehicles in the parking lot, sheltered from the cold and stormy weather. The guests would then watch the ceremony taking place at the end of the dock from the comfort and warmth of their cars. During the ceremony, the Decedent pointed out to Teague that Holt's car had arrived in the lot. Holt is the mother of the Decedent. Holt, supposed to be one of the witnesses to the ceremony, later testified that she was not present at the wedding and was instead at home having dinner with her husband when the wedding occurred.[3] After the ceremony, the marriage license was filed with and accepted by the Delaware Office of Vital Statistics.

All indications point to this union being a real marriage, as understood by the couple, their family, and their community. No one challenged the validity of the marriage during the Decedent's life. In fact, the Petitioner fashioned a wedding ring for Ms. LaFon out of copper just before the ceremony. After the ceremony, the Petitioner and Holt purchased a diamond wedding ring for Ms. LaFon to replace the copper band. The Decedent and Ms. LaFon then lived together in the Decedent's home. The Court of Chancery noted:

> Not only the Petitioner, but everyone in the couple's lives seemed to treat the couple as married while the Decedent was alive. And the evidence strongly supports the conclusion that Respondent and

---

[3] The Magistrate found that Holt was not present at the wedding, a factual finding that the Court of Chancery adopted. *See* App. to Opening Br. at A161; Corrected Opening Br. Ex. A, at 4.

4

Decedent believed that they were married and had fully complied with the statute. They relied on the officiant and had submitted the required paperwork, which was accepted by the Office of Vital Statistics. Nothing here suggests that the couple intended anything other than to comply with all the statutory requirements, and, indeed, believed they had.[4]

Just months into the marriage, the Decedent passed away unexpectedly. Relations between Ms. LaFon and the Decedent's parents soured over Ms. LaFon's continued residence in the Decedent's home and her refusal to provide certain personal possessions of the Decedent to the Petitioner and Holt.

The dispute over the Decedent's home and possessions boiled over when the Petitioner sought and received an appointment as the personal representative of the Decedent's estate on September 20, 2023. The Petitioner filed a Petition for Rule to Show Cause to Compel Return of Assets of an Estate, seeking to gain access to the Decedent's home. That petition was accompanied by a Motion to Expedite. Yet neither his petition nor his motion mentioned the marriage; he referred to Ms. LaFon only as a "guest of the property."[5] The Magistrate in Chancery to whom the petition was assigned learned of the marriage when Ms. LaFon appeared at the hearing on the Motion to Expedite and handed her marriage license to the Magistrate. The Magistrate denied the Motion to Expedite.

---

[4] Corrected Opening Br. Ex. A, at 20.
[5] *Id.* at 7.

The Petitioner then sought a declaration that Ms. LaFon was not the lawful spouse of the Decedent. After an evidentiary hearing, the Magistrate ruled in Ms. LaFon's favor, concluding that, even though the marriage was not "solemnized in the presence of two reputable witnesses" as required under 13 *Del. C.* § 106(a)(4), the Petitioner lacked standing to seek an annulment under the Act, which limits the ability of anyone other than a party to the marriage to seek an annulment after the death of one of the spouses. The Petitioner filed exceptions to the Magistrate's Report. The Court of Chancery denied those exceptions in an Implementing Order, holding that the Petitioner was barred from seeking an annulment under the Act. The Court of Chancery also denied equitable relief, finding that the Petitioner had acted with unclean hands, attempting to "pull a bit of a fast one" on a recent widow and the court when he misrepresented the nature of the Decedent and Ms. LaFon's relationship in his first appearance before the Magistrate.[6]

On appeal, the Petitioner contends that the Court of Chancery erred when it applied the Act to his bid for a declaratory judgment that a "valid marriage never occurred."[7] In his view, because of the absence of two witnesses at the Woodland Beach Ceremony, "no enforceable marriage was entered into," rendering the Act's limitations on who can annul a marriage inapplicable.[8] According to the Petitioner,

---

[6] *Id.* at 16.
[7] App. to Opening Br. at A16.
[8] Corrected Opening Br. at 6.

the dispositive issue, then, is whether the parties "lawfully entered the marital contract at all."[9]

## II

Statutory interpretation is a question of law, reviewed *de novo*.[10]  We accept the factual findings of the Magistrate to which no party filed timely exceptions.  That includes the finding that the purported witness Holt was not present at the wedding.[11]

## III

## A

13 *Del C.* §§ 106-107 set out the requirements for a valid ceremonial marriage in Delaware.  Section 107 provides marriage licensing requirements: persons intending to be married "shall obtain a marriage license at least 24 hours prior to the time of the ceremony" and that license "must be delivered to the person who is to officiate before the marriage can be lawfully performed."[12]

Section 106 lists the classes of persons authorized to solemnize a marriage— religious officials, judges, and the like—and provides for "solemnization

---

[9] Corrected Opening Br. at 33.
[10] *Riad v. Brandywine Valley SPCA, Inc.*, 319 A.3d 878, 883 (Del. 2024).
[11] *Backer v. Palisades Growth Capital II, L.P.*, 246 A.3d 81, 94 (Del. 2021).  Appellee did not timely file exceptions to the Magistrate's report. *See Del. Ch. R.* 144(d)(1).
[12] 13 *Del. C.* § 107.

requirements," which ensure that a witnessed, ceremonial marriage takes place. The statute states:

> Marriages shall be solemnized in the presence of at least 2 reputable witnesses who are at least 18 years of age and who shall sign the certificate of marriage as prescribed by this chapter . . . No marriage shall be solemnized or contracted without the production of a license issued pursuant to this chapter.[13]

Of the five requirements provided by §§ 106-107—a qualified officiant, the securing of a license, the production of the license to the officiant, the presence of at least two witnesses at the ceremony, and the witnesses' signing of the marriage certificate—the LaFons' wedding at Woodland Beach met four. The only one lacking was the presence of two qualified witnesses.[14] We must decide whether such a failure invalidates what the LaFons and everyone around them believed to be a valid marriage.

## B

Delaware case law addressing this issue is sparse. The most instructive case is *In re Parsons' Estate,* in which the putative heirs of William H. Parsons alleged that Laura Q. Parsons was not Mr. Parsons' wife and therefore not qualified to act as the administratrix of his estate.[15] Although there was ample testimony describing a

---

[13] 13 *Del. C.* § 106(a)(4).

[14] The Petitioner's briefing identifies Holt's absence as his sole basis for challenging the couple's adherence to the dual-witness requirement. The Petitioner does not claim that Reilly was absent from the ceremony or argue Reilly's insufficiency as a witness. This Court considers only the arguments presented to it.

[15] 59 A.2d 709, 710 (Del. Super. Ct. 1948).

formal ceremony of marriage before a minister, the signing of documents, and the decedent's bestowal of a wedding ring, Ms. Parsons was unable to produce a marriage certificate and had forgotten the names of the witnesses and the minister who officiated. According to the court, "[n]o record of the marriage exist[ed]."[16] Despite this failure to produce a signed marriage certificate—a formal prerequisite to the solemnization of a marriage under § 106—the *Parsons* court declined to invalidate the Parsons' marriage. It found that the indicia of the validity of the ceremony and the parties' subsequent "cohabitation as man and wife in their own community" created a presumption of a valid ceremonial marriage.[17] In an earlier case, *Wilmington Trust Co. v. Hendrixson,*[18] the Superior Court espoused a similar view.

These cases, though not perfectly on point, support the notion that a minor defect in the solemnization of a marriage does not necessarily invalidate a marriage. As discussed next, cases from other jurisdictions point in a similar direction when addressing the failure to meet statutory solemnization requirements generally and, more specifically, the failure to meet a witness requirement.

---

[16] *Id.*

[17] *Id.* at 713.

[18] 114 A. 215, 223 (Del. Super. Ct. 1921) ("[I]f a marriage had been performed in compliance with the laws of this state in all other respects, it would not be held invalid because of the failure to take out a license therefor.") To be sure, this statement was *dicta*, and there are other statements in *Hendrixson*—also *dicta*—that could be seen as contrary to the result we reach in this opinion. In our view, *Hendrixson*'s context—consideration of the validity of non-ceremonial common law marriages—cautions against placing great weight on its musings.

C

One treatise on the law of marriage observed that "statutes regulating the issuing of licenses, the attendance of witnesses, formal solemnization and the like, are generally held to be directory unless a statute expressly invalidates marriages not in conformity therewith."[19] The United States Supreme Court reached a similar conclusion in *Meister v. Moore*, characterizing solemnization requirements as "merely directory" in declining to invalidate a noncompliant marriage.[20] Federal and state appellate courts have followed suit.[21] The Supreme Court of Connecticut described solemnization requirements as "directory rather than mandatory[,]" holding in an "unbroken line of cases" that marriages which fail "to observe a statutory requirement" are not void.[22] The Supreme Court of Tennessee similarly refused to invalidate a marriage based on a failure to comply with a solemnization requirement, when "the marriage in question was believed to be a valid, lawful

---

[19] Frank H. Keezer, The Law of Marriage and Divorce (3d ed. 1946).

[20] 96 U.S. 76, 81 (1877). According to Black's Law Dictionary, 11th Ed., 578, a "directory requirement" is "[a] statutory or contractual instruction to act in a way that is advisable, but not absolutely essential—in contrast to a mandatory requirement." For a line of cases in accord with *Meister v. Moore*, *see Pearson v. Howey*, 1829 WL 520, at *6 (N. J. 1829); *Hames v. Hames*, 316 A.2d 379, 598-99 (Conn. 1972) (citations omitted); and *Barnett v. Hudspeth*, 27 Cal. Rptr. 140, 142 (Cal. Ct. App. 1962).

[21] "[S]ome legislative commandments, particularly those affecting the validity of a marriage, are directory rather than mandatory." *Carabetta v. Carabetta,* 438 A.2d 109, 111 (Conn. 1980). "[T]he provisions . . . requiring that the marriage be celebrated in the presence of three witnesses and that the act evidencing the celebration of that marriage be signed by three witnesses, are merely directory to the celebrant, and . . . the failure to observe these formalities in a wedding ceremony does not strike the marriage with nullity." *Parker v. Saileau*, 213 So. 2d 190, 191 (La. Ct. App. 1968). *See also Barrons v. U.S.*, 191 F.2d 92 (9th Cir. 1951).

[22] *Carabetta*, 438 A.2d at 112.

marriage, both by the complainant and the defendant, the clergyman [the officiant], and all concerned."[23]  The Tennessee court considered whether the "want of compliance with the formalities prescribed by the statute"—an allegation the court accepted as true without deciding so—would permit the plaintiff to deny or impeach the marriage's validity.[24]  The court answered in the negative.  It found that the parties' completion of a formal ceremony and reasonable, albeit mistaken, belief that they had complied with solemnization requirements generated a presumption of a valid marriage.[25]

More particularly, witness requirements are construed as "directory" absent a clear legislative statement that failure to meet the requirement invalidates a marriage. In *Parker v. Saileau*, for instance, a Louisiana appellate court faced a challenge to a marriage that suffered from the attendance of only two witnesses where the statute required the presence of three.[26]  The Louisiana court declined to invalidate the witness-deficient marriage, concluding that:

> the provisions . . . requiring that the marriage be celebrated in the presence of three witnesses and that the act evidencing the celebration of that marriage be signed by three witnesses, are merely directory to

---

[23] *Johnson v. Johnson*, 1860 WL 3105, at *2 (Tenn. 1860).

[24] *Id.*

[25] *Id.*  Courts and treatises have reached different conclusions where the parties intended noncompliance with the statute, had no formal wedding ceremony, or presented substantive defects that a statute specified would void a marriage, such as a familiar relation between the parties. Those concerns are not present here.

[26] 213 So. 2d 190 (La. Ct. App. 1968).

11

the celebrant, and . . . the failure to observe these formalities in a wedding ceremony does not strike the marriage with nullity.[27]

In *Barnett v. Hudspeth*, a California appellate court reached a similar conclusion, holding that a marriage deficient for lack of the statutorily required number of witnesses was not void.[28]  Courts decline to invalidate marriages presenting with an error in solemnization when the marriage has been formalized by an otherwise adequate ceremony, as is the case here.  But the directory nature of solemnization requirements is not the only consideration when courts address the validity of a marriage.  Policy considerations, as we discuss next, play a role.

D

"The policy of the law is strongly opposed to regarding an attempted marriage . . . entered into in good faith, believed by one or both of the parties to be legal, and followed by cohabitation, to be void."[29]  In *Barnett*, the court elaborated on how courts apply such a preference for the validity of a good-faith marriage within the context of a witness-deficient ceremony:

> The only conceivable purpose of the requirement that there be two witnesses to the marriage ceremony, therefore, is to prove that the marriage occurred, in the event that there is a claim by either party that it did not take place. Here the parties admit the marriage took place. Therefore, the necessity for the witnesses to prove its performance is obviated. The parties did everything required of them in order to

---

[27] *Id.* at 192.

[28] 27 Cal. Rptr. at 142.

[29] *Hames v. Hames*, 316 A.2d 379, 385 (Conn. 1972).  Delaware statutes evidence a preference for validity.  For example, § 106(e) describes an unlicensed marriage as void "unless it is in other respects lawful and is consummated with the full belief of either of the parties in its validity."

effectuate a legal marriage. Pursuant to the ceremony and in reliance thereon they thereafter conducted themselves as husband and wife. The court should strive to uphold the validity of bona fide marriage rather than seek ways to invalidate it. The status of parties who marry in good faith should not be jeopardized unless public policy compels such action. In this instance it does not.[30]

So too here. The Petitioner does not suggest that the ceremony never occurred. The policy considerations animating the dual-witness requirement, including the potential for a party to deny the existence of the ceremony, are not implicated by this couple's failure to confirm the presence of their second witness, a witness that the groom believed was present. Absent a persuasive reason to construe § 106(a)(4) as invalidating marriages with a marginally deficient ceremony and given the policy preference in both this state and others that gives effect to marriages entered into with intent to comply with the laws, we decline to view the statute as voiding in this instance. As one court put it two centuries ago, "a court of justice must have great firmness, or some quality that might receive a much harsher name, to rescind a marriage contract after it had been fully made, because the parties had not complied with certain forms."[31] In accordance with the principles discussed

---

[30] 27 Cal. Rptr. at 142. The California court applied Nevada marriage law, and Nevada's law differs from ours. Nevada had a statute specifying the difference between void and voidable marriages and a difference in treatment based on the degree of invalidity. That pattern can be found across states' marriage laws and treatises. Despite Delaware's lack of such a statute, the court's explanation of the dual-witness requirement and why failure to meet that requirement is not necessarily fatal to a marriage in similar factual circumstances is instructive.

[31] *Pearson*, 1829 WL 520, at *6.

above, we conclude that the absence of the second witness at the LaFons' wedding did not void their marriage.

E

We turn briefly to the Court of Chancery's application of the Act. Petitioner argues that the court's application violated the text of the Act, which applies only to "parties to a marriage." This argument hinges on the Petitioner's contention that the marriage was void *ab initio*. Our rejection of that contention, as set forth above, cuts the ground from under this argument.

Because the marriage is not void, any effort to annul it must conform to the Act and specifically 13 *Del. C.* § 1506. Under that section of the Act, "in no event may a decree of annulment be sought after the death of either party,"[32] subject to certain limited exceptions and limitations as to the persons who may seek annulment. In his motion for declaratory relief, the Petitioner acknowledged that he was not within the class of persons entitled to seek an annulment.[33] Hence, we affirm the Vice Chancellor's conclusion that "the Petitioner does not fall within the parameters outlined by the statute, and, therefore, cannot annul the marriage."[34]

---

[32] 13 *Del. C.* § 1506(b).
[33] App. to Opening Br. at A16–17.
[34] Corrected Opening Br. Ex. A, at 11.

14

## IV

For the reasons set forth above, the judgment of the Court of Chancery is

**AFFIRMED**.